**FIRST INTERSTATE BANK OF DENVER, N.A., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civ.A.No. 87–C–929.**

United States District Court, D. Colorado.

July 21, 1989.

See also 671 F.Supp. 17.

James C. Underhill, Denver, Colo., for plaintiff.

James A. Clark, Federal Deposit Ins. Corp., Washington, D.C. and James W. Winchester, Asst. U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

### Introduction

This action arises over a dispute in the interpretation of the term "deposit" as defined by federal statute and regulation. Plaintiff, First Interstate Bank of Denver, N.A. ("First Interstate"), alleges that it had on deposit with Security Bank of Glenrock, Wyoming ("Glenrock"), $31,904.64 at the time of Glenrock's closure by the Wyoming Bank Examiner, and that the FDIC, as receiver, is obligated to reimburse First Interstate for its deposit loss. The FDIC alleges that the $31,904.64 was an extension of credit, not a deposit, and therefore the plaintiff is entitled to recover only as an ordinary creditor. Jurisdiction is alleged to exist under 28 U.S.C. section 1331.

### I. *Facts.*

The facts are not in dispute. First Interstate maintains an account with the Federal Reserve. The purpose is to allow the Federal Reserve to debit this account when checks are presented to it for collection. Glenrock, being a small rural bank, does not maintain its own account with the Federal Reserve. Instead, First Interstate, through an "Auto–Agreement" with Glenrock, acts as a "correspondent" bank for Glenrock, the "respondent" bank. When checks written by Glenrock's customers are presented at the Federal Reserve the following procedure takes place: The Federal Reserve bundles all the checks together with a cash letter. The cash letter lists each check and the total amount. This is then sent to Glenrock. At the same time a copy of the cash letter is sent to First Interstate for approval. If First Interstate honors the cash letter, the Federal Reserve advances payment for the individual checks and First Interstate's account is debited for that amount. If First Interstate rejects the cash letter, the individuals' checks are returned to the respective payees as uncollectable. Glenrock maintains an account with First Interstate so that when the Fed-

eral Reserve debits First Interstate's account, First Interstate can debit Glenrock's account for the corresponding amount. First Interstate receives the cash letter every morning and has until 2:00 p.m. that day to accept or reject the letter.

On June 6, 1986, First Interstate received a cash letter for $181,348.00 on Glenrock's behalf. Glenrock did not have sufficient funds on deposit with First Interstate to cover the entire amount. Donna Brand of First Interstate called Colleen Bolte of Glenrock to see if they would send sufficient funds to cover the shortfall. (If Glenrock could not cover the shortfall, First Interstate would in turn inform the Federal Reserve that it would not honor the cash letter). Brand was placed on hold. When Bolte returned she told Brand that Glenrock would send the funds.

Unknown to Brand at the time of her phone call, Robert Ronning from the FDIC and Kenneth McIlhaney from the Wyoming Division of Banking were at the Glenrock Bank for the purpose of closing the bank that day. Plaintiff alleges that these two men knew and approved of the representation made by Bolte. Defendant does not deny that it was aware of Bolte's representation that she would send the money to cover the shortfall.

Based on Glenrock's representation that sufficient funds would be sent, First Interstate approved the cash letter. At 4:00 p.m. that day, the Wyoming Bank Examiner closed the Glenrock bank. Glenrock never sent any funds to First Interstate. This resulted in a loss to First Interstate of $31,904.64.

## II. *Discussion.*

Both First Interstate and the FDIC seek summary judgment. Each alleges that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Pursuant to F.R.Civ.P. Rule 56(c), summary judgment:

... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Avrick v. Rockmont Envelope Company,* 155 F.2d 568 (10th Cir.1946) the court stated:

"The salutary purpose of Rule 56 is to permit speedy and expeditious disposal of cases where the pleadings do not as a matter of fact present any substantial question for determination." Id. at 571. *See also, Rea v. Wichita Mortgage Corp.* 747 F.2d 567 (10th Cir.1984).

### A. *First Interstate's Arguments.*

Plaintiff First Interstate submits four theories upon which it claims the right to recover $31,904.64 from the FDIC: (1) the amount claimed qualifies as a "deposit" under 12 U.S.C. § 1813($l$)(1); (2) the amount claimed qualifies as a "deposit" under 12 U.S.C. § 1813($l$)(3); (3) the amount claimed qualifies as a "deposit" under 12 C.F.R. § 330.12; and (4) defendant has been unjustly enriched and should be forced to disgorge the funds claimed. Each argument will be discussed in turn.

1. Plaintiff's Claim Qualifies As A Deposit Under 12 U.S.C. Section 1813($l$)(1).

I conclude that under the definition in 12 U.S.C. § 1813($l$)(1), First Interstate's claim of $31,904.64 is a "deposit." As such, the FDIC is required to reimburse First Interstate's insured loss.

12 U.S.C. § 1813($l$)(1) states:

The term "deposit" means—

(1) the unpaid balance of money or its equivalent received or held by a bank in the usual course of its business and for which it has given or is obligated to give credit, either conditionally or unconditionally.

In interpreting this section, the Supreme Court imposed the requirement that a deposit of money or its equivalent be "hard earnings" that businesses and individuals have entrusted to banks. *Federal Deposit Insurance Corp. v. Philadelphia Gear Corp.,* 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986). In order to qualify as

a "deposit," the *Philadelphia Gear* Court required that: (1) there be an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course of business; (5) for which it has given or is obligated to give credit. The Court held that a stand-by letter of credit does not fall within the meaning of an insurable "deposit" because this was only a contingent obligation and did not represent "hard earnings."

Another case that sheds light on the meaning of the term "deposit" is *Federal Deposit Insurance Corp. v. European American Bank and Trust Co.*, 576 F.Supp. 950 (S.D.N.Y.1983). There, the court held that electronic transfers of funds known as "CHIPS," when wired through the Federal Reserve, were "deposits" under 12 U.S.C. § 1813. Thus a deposit may result even when no actual currency is involved.

In the present case, on June 6, 1986, First Interstate honored Glenrock's cash letter in the amount of $181,348. This and subsequent acts were sufficient to satisfy the five requirements of a "deposit" under *Philadelphia Gear* for the following reasons: (1) Glenrock had credited their First Interstate account in this amount. As a result, after Glenrock closed and distributed its remaining assets, there was an unpaid balance of $31,904.64 owed to First Interstate. (2) The Federal Reserve honored Glenrock's individual depositors' checks only after they had debited this amount from First Interstate's account. This resulted in depletion of First Interstate's "hard earnings." (3) First Interstate's payment honoring the individual depositors' checks, and Glenrock's crediting of the First Interstate account, show that the money advanced by First Interstate was "received" or "held" by Glenrock. (4) The Federal Reserve procedure in debiting First Interstate's account on behalf of Glenrock had been part of the normal course of business for all three entities since 1982. Finally, (5) Glenrock's own books showed a credit balance indicating that it owed First Interstate $31,904.64.

In total, First Interstate has satisfied all the requirements of a claim for a deposit under 12 U.S.C. § 1813($l$)(1), and therefore is entitled to summary judgment on this issue.

2. Plaintiff's Claim Qualifies as a Deposit under 12 U.S.C. Section 1813($l$)(3).

I conclude that the plaintiff is also entitled to summary judgment on this issue. Title 12 U.S.C. Section 1813($l$)(3) states:

The term "deposit" means—

(3) money received or held by a bank, or the credit given for money or its equivalent received or held by a bank, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established.

The only difference between this section and 12 U.S.C. § 1813($l$)(1) is that this definition requires that the money received be for a special or specific purpose. It is undisputed that Glenrock established account number 11–511–17 in First Interstate's name. The specific purpose was to receive money from First Interstate for the payment of its cash letter. This purpose, along with the satisfaction of § 1813($l$)(3)'s other requirements, qualifies the plaintiff's claim as an insured deposit under this section.

3. Plaintiff Claims as an Insured Depositor under 12 C.F.R. section 330.12.

■ Plaintiff's claim also qualifies as a deposit under 12 C.F.R. sec. 330.12. This section states:

"Where a closed bank has become obligated for the payment of items forwarded for collection by a bank acting solely as agent, the owner of such items will be recognized for all purposes of claims for insured deposits to the same extent as if his name and interest were disclosed on the records of the bank when such claim for insured deposits, if otherwise payable, has been established by the execution and delivery of prescribed forms. Such bank forwarding such items for the owners thereof will be recognized as agent for such owners for the purpose of

making an assignment of the rights of such owners against the closed insured bank to the Federal Deposit Insurance Corporation and for the purpose of receiving payment on behalf of such owners."

Apparently no case has interpreted this regulation. Further, there is no legislative or administrative authority interpreting it. As stated by the plaintiff this is an issue of first impression.

The purpose of this section is to give insurance protection to a bank that has made payment for checks written by individual depositors of the closed bank. The bank seeking insurance protection must be acting solely as agent for the closed bank and must, in essence, have stepped into the shoes of the closed bank's depositors. The agent bank, having paid the obligations of the individual depositors, is assigned the rights of those depositors who would have had claims against the FDIC for the amount of their checks. First Interstate has paid the amounts. Had First Interstate not paid these amounts the depositors would have claims aggregating $31,904.64 against the FDIC. Therefore, I hold that First Interstate is entitled to the assignment of the depositors' claims.

4. The FDIC Has Been Unjustly Enriched and Must Disgorge the $31,904.64 it Received From Plaintiff.

■ Under the doctrine of unjust enrichment, the FDIC must disgorge the funds paid by the plaintiff. The requirements of unjust enrichment were set forth in *Cargill Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977):

"The elements of unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit."
Id. at 1224.

See also *Laymon v. McComb*, 524 F.Supp 1091, 1096 (D.Colo.1981); *Martinez v. Continental Enterprises*, 730 P.2d 308, 317 (Colo.1986).

Glenrock was a federally insured bank prior to its closing on June 6, 1986. By making payment on behalf of Glenrock, First Interstate ensured that the individual checks of Glenrock's depositors were honored. This reduced by $31,904.64 any claim by Glenrock depositors which in turn reduced the liability of the FDIC to these depositors. This reduction in depositors' claims constitutes unjust enrichment because the FDIC has escaped this additional $31,904.64 liability.

Plaintiff bank argues that the elements of unjust enrichment are present under the undisputed facts. (1) First Interstate conferred the benefit of $31,904.64 on the FDIC since the depositors no longer may claim this amount. (2) FDIC accepted this benefit since it acknowledged the reduction of Glenrock's individual depositors' accounts and refused to honor any claim for the higher amount. (3) When First Interstate covered Glenrock's shortfall it was based on Glenrock's representation that funds would be sent to cover the insufficiency. Had First Interstate known that Glenrock would not cover its shortfall, First Interstate would not have approved the cash letter. The purpose of federally insuring deposits is to protect businesses and individuals from bank failures. The hard earnings of First Interstate have the same right of protection as individual depositors' funds. It would be manifestly unjust for the FDIC to retain these benefits at the expense of First Interstate when it is the statutory purpose of the FDIC to protect those in First Interstate's position.

### B. FDIC's Arguments.

The FDIC has responded to only two of the plaintiff's four arguments. It argues that: (1) An overdraft in a failed bank's deposit account in another institution does not constitute a deposit within the plain meaning of 12 U.S.C. § 1813(*l*)(1); and (2) 12 C.F.R. sec. 330.12 does not extend insurance protection to an overdraft by a failed bank at another institution. The combined papers of the defendant's Motion for Summary Judgment and the defendant's Reply to Plaintiff's Motion conspicuously omit any rebuttal to the plaintiff's claim under

12 U.S.C. § 1813($l$)(1) or unjust enrichment.

1. FDIC's Claim That First Interstate's Account Does Not Fall Under 12 U.S.C. 1813($l$)(1) is Ill Founded.

The gravamen of FDIC's first argument is that First Interstate did not deposit money at Glenrock, but merely extended credit. In support of this argument FDIC quotes from *Philadelphia Gear:*

"Congress' focus in providing for a system of deposit insurance—a system that has been continued to the present without modification to the basic definition of deposits that are 'money or its equivalent'—was clearly a focus upon safeguarding the assets and 'hard earnings' that businesses and individuals have entrusted to banks. Congress wanted to ensure that someone who put tangible assets into a bank could always get those assets back. The purpose behind the insurance of deposits in general, and especially in the section defining deposits as 'money or its equivalent' therefore, is the protection of assets and hard earnings entrusted to a bank." *F.D.I.C. v. Philadelphia Gear Corp.,* 476 U.S. 426, 106 S.Ct. 1931 at 1936.

This quote does not bolster the F.D.I.C.'s position. On the contrary, it weakens its argument. First Interstate falls within Congress' contemplation of a business that had entrusted its "hard earnings" to Glenrock and one entitled to the protection of insurance on its assets.

2. FDIC's Claim That First Interstate's Account Does Not Fall Within 12 C.F.R. § 330.12 Is Without Merit.

The FDIC seeks to refute the plaintiff's claim under 12 C.F.R. § 330.12 with two independent theories: (a) First Interstate has no legal basis to assert that it was a bank acting solely as agent which forwarded items for collection; and (b) since the Federal Reserve Bank had paid the items before forwarding the cash letter, Glenrock was no longer obligated for payment of the items to their owners when it failed on June 6, 1986.

■ The FDIC agrees that the "Auto–Charge" agreement between Glenrock and First Interstate was in effect on June 6, 1986. The FDIC incorrectly asserts that this agreement does not establish First Interstate as Glenrock's agent. The requirements to establish an agency relationship were set forth in *System Investment Corp. v. Montview Acceptance Corp.,* 355 F.2d 463 (10th Cir.1966):

"The rules governing the creation and interpretation of [defendant's] authority in this case are universally accepted. The American Law Institute Restatement of the Law, Agency, 2d, states that ' ... authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.' " Id. at 466.

First Interstate received express written authority from Glenrock to make its payments to the Federal Reserve with the understanding that Glenrock would reimburse First Interstate for that payment. Assuming, *arguendo,* that there was no express written or oral authorization by Glenrock, Glenrock had still created the agency relationship by its ratification of First Interstate's act. The definition of ratification was stated in *Chicago Title Insurance Co. v. Progressive Housing Inc.,* 453 F.Supp. 1103 (D.Colo.1978).

"Ratification, according to section 82 of the Restatement of Agency 2d

'is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.' " Id. at 1108.

It is undisputed that for over four years Glenrock allowed First Interstate to transact business with the Federal Reserve on Glenrock's account. Clearly, First Interstate was acting as Glenrock's agent.

■ The FDIC's second argument is that since the Federal Reserve paid the obligations of the Glenrock depositors, Glen-

rock no longer had any obligation for payment of these items. This argument fails for two reasons. First, the only reason Glenrock would not be obligated to its depositors was because it had induced First Interstate to make payment on its behalf, thus allowing the Federal Reserve to pay the items. Glenrock will not be allowed to profit by its misrepresentation that it would send the required funds to First Interstate. Second, even though the Federal Reserve had paid these items, Glenrock was still "obligated for the payment of items" as stated in 12 C.F.R. § 330.12. Glenrock was not obligated to pay the individual depositors' checks, this having been done by First Interstate, but Glenrock was obligated to reimburse First Interstate for paying the depositors' checks. Nowhere in 12 C.F.R. § 330.12 is there a requirement that the obligation run to the depositors as alleged by the FDIC.

The FDIC further states that deference should be given to its construction of its statutes and regulations. The agency's interpretation is entitled to such deference if it is reasonable and not in conflict with the express intent of Congress. *See, United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), and *CBC, Inc. v. Board of Governors of the Federal Reserve System,* 855 F.2d 688 (10th Cir.1988). The FDIC has not set forth any previous construction of the statute or regulation. Furthermore, any agency construction must not conflict with the clear intent of Congress. As stated earlier, it was the express intent of Congress to protect the hard earnings of businesses in First Interstate's position.

The FDIC cites *Investment Company Institute v. Clarke,* 793 F.2d 220 (9th Cir. 1986) to buttress its deference argument. This case however, acknowledged the requirement that the agency's construction of its statutes and regulations be reasonable. The FDIC's arguments that Interstate's claim is not a deposit under 12 U.S.C. § 1813(*l*)(3) and that 12 C.F.R. § 330.12 has no relevance to this case are unreasonable and contrary to Congressional intent. Therefore, deference to the FDIC's present position is inappropriate.

For the reasons stated, I find and conclude that:

(1) First Interstate had on deposit, as defined by 12 U.S.C. § 1813(*l*)(1), § 1813(*l*)(3), and 12 C.F.R. § 330.12, with Glenrock, $31,904.64 when the Glenrock bank was closed on June 6, 1986.

(2) This deposit is entitled to federal insurance.

It is ordered that:

A. The plaintiff's motion for summary judgment is granted.

B. The defendant's motion for summary judgment is denied.

C. The FDIC shall pay to First Interstate Bank of Denver, N.A. the amount of $31,904.64, plus interest from June 6, 1986.