Kingman LAMBERT; Cynthia A. Lambert; Kristen Lambert; Kimberly Lambert, Plaintiffs/Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant/Appellee.

No. 86–5500.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1987.

Decided May 27, 1988.

Leonard Kreinces, Harrison, New York City, Robert Boehmer, Wildish & Boehmer, Orange, Cal., for plaintiffs-appellants.

Thomas A. Schulz, FDIC, Washington, D.C., for defendant-appellee.

Before SNEED, PREGERSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Kingman and Cynthia Lambert (Lambert) appeal the district court's grant of summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC) in an action reviewing the FDIC's denial of Lambert's insurance claims. Lambert seeks insurance payments in excess of $100,000, the statutory limit for deposits by an individual. We conclude that Lambert is entitled to insurance coverage for two accounts under 12 C.F.R. § 330.3 (1985), which provides for additional coverage when a trust account is payable to a spouse upon the death of the depositor.

## FACTS

Kingman Lambert deposited assets of the Lambert Family Trust into three savings accounts at Heritage Bank in Anaheim, California. The trust was established by Kingman and his wife, Cynthia Lambert, as trustors and provides that, upon the death of either trustor, the trust estate shall be divided into three shares designated as Trusts A, B, and C. If Kingman predeceases his spouse, all of the community property in the trust goes to Trust A with nothing reverting to Trusts B or C. If Cynthia dies first, Kingman's share of the community property goes to Trust A and Cynthia's share would be divided between Trusts B and C.

Trust A provides a life estate for the surviving spouse who may withdraw the funds or appoint the remainder by will. Trusts B and C are for the benefit of the Lambert children, but the entire income and principal may be spent by Kingman.

Thus, if Kingman dies first, all of the funds in the three accounts would go into Trust A for the benefit of Cynthia. Trusts B and C, for the benefit of the Lambert children, would not be funded. If Cynthia predeceases Kingman, his share of the community property would go to Trust A for Kingman's benefit and Cynthia's share of the community property would be divided between Trusts B and C. In effect, if Kingman dies first, Cynthia would receive

the benefit of the trust estate, whereas if Cynthia predeceased Kingman, only half of the trust funds would be for Kingman's benefit and the other half for the benefit of the two children, although Kingman could use these trust funds if needed. Last, illness and funeral expenses as well as probate fees, estate taxes, and debts of the trustors are to be paid out of the trust assets.

On March 16, 1984, the California Superintendent of Banks closed Heritage Bank for insolvency and named the FDIC receiver. At the time, the three Lambert accounts totalled $315,245.52, with all three accounts containing roughly equal balances. The FDIC paid Lambert $100,000 representing the maximum coverage for an individual depositor permitted under the Federal Deposit Insurance Act. In addition, the FDIC paid Lambert $75,335.93 as a liquidating dividend on the uninsured balance of the three accounts. The FDIC apparently treated the three accounts as belonging to the same depositor in limiting the insurable interest to $100,000.

Lambert brought this action in district court under 12 U.S.C. § 1821(f) (1982) seeking a judicial determination of the amount due under the Federal Deposit Insurance Act. Lambert contends that the FDIC unreasonably applied its rules in refusing to provide additional insurance coverage, and that the FDIC's interpretation was arbitrary. The district court granted the FDIC's motion for summary judgment and Lambert appeals.

## DISCUSSION

### 1. *Standard of Review*

"[A]n agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable." *Sierra Club v. Clark,* 756 F.2d 686, 690 (9th Cir.1985); *see Medberry v. Hegstrom,* 786 F.2d 1389, 1391 (9th Cir.1986) (where an ambiguity exists, an agency's interpreta-

tion of its regulation controls unless plainly erroneous or inconsistent with the regulation). We review a grant of summary judgment de novo. *Hernandez v. Johnston,* 833 F.2d 1316, 1317 (9th Cir.1987).

### 2. *Statutory and Regulatory Framework*

The FDIC is an agency created by the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811–1831d (1982) (as amended), to regulate banks. The FDIC insures deposits at qualified banks and acts as a receiver in case of bank failure. Section 1813(m)(1) defines deposits which qualify for federal deposit insurance: " 'Insured deposit' means the net amount due to any depositor ... for deposits in an insured bank ... less any part thereof which is in excess of $100,000. Such net amount shall be determined according to such regulations as the Board of Directors [of the FDIC] may prescribe." Generally, in determining the amount due to any depositor, all deposits in the bank maintained in the same capacity are added together so that an individual depositor is limited to $100,000 insurance. Comprehensive regulations that define the extent of insurance coverage and permit payment of deposit insurance above $100,000 in limited circumstances are found in Part 330 of Title 12 of the Code of Federal Regulations.

### 3. *Multiple Trust Accounts and Valuation of Trust Interests (12 C.F.R. §§ 330.10, 330.1(c)(1))*

██ Under section 330.10 [1], each beneficiary of a trust is entitled to $100,000 of insurance coverage. Lambert argues that the interest of each of the four beneficiaries of the trust should be insured separately up to $100,000. He contends that the interest of each beneficiary of the trust is capable of calculation and thus should be separately insured under section 330.1(c)(1).[2] Lambert's arguments must fail

---

**1.** Section 330.10 provides in part: "All trust interests for the same beneficiary deposited in deposit accounts established pursuant to valid trust agreements created by the same settlor

(grantor) shall be added together and insured up to $100,000 in the aggregate...."

**2.** Section 330.1(c)(1) provides in part:

because the term "trust interest" is limited by section 330.1(c)(4) to interests in irrevocable trusts. The Lambert trust agreement is revocable.

Section 3.01 of the trust agreement provides: "During the lifetime of both Trustors, the community estate may be withdrawn in whole or in part by either Trustor, and any separate estate may be withdrawn in whole or in part by the Trustor who created it." By its own terms, the trust is revocable.

Lambert, however, argues that another provision of the trust agreement renders it irrevocable. Lambert points to trust section 3.02 which provides:

> From and after the death of the first Trustor to die, the surviving Trustor shall have the power to alter, amend or revoke Trust A (as hereinafter described) in whole or in part by an instrument in writing delivered to the Trustee, but Trust B and Trust C (as hereinafter described) may not be altered, amended or revoked by any person. From and after the death of the surviving trustor, Trust A may not be altered, amended or revoked by any person.

This section does not become effective until the death of the first trustor. Both trustors were alive when the bank was closed. The trust was therefore revocable on the critical date.

### 4. *Joint and Single Ownership Accounts (12 C.F.R. §§ 330.2, 330.9)*

■ Lambert contends that each account was separately insurable up to $100,000.

He argues that the first was an individual account owned by the Lambert Family Trust, the second was an individual account owned by Kingman Lambert, and the third was a joint account owned by all four members of the family. Lambert would have the court apply sections 330.2 [3] and 330.9.[4]

The Lambert accounts do not qualify under these sections. According to 12 U.S.C. § 1822(c) (1982), the FDIC may recognize ownership of deposit accounts only when held by persons whose name or interest is disclosed on the deposit account records. The three signature cards bear only Kingman Lambert's signature in his capacity as trustee.

In addition, 12 C.F.R. § 330.1(b)(1) provides:

> The deposit account records of the insured bank shall be conclusive as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian or executor. No claim for insurance based on such a relationship will be recognized in the absence of such disclosure.

For his theory to be valid, Lambert would have to be seen as having signed in his capacity as individual on one account, as trustee on another, and as agent on the third. There is no basis in the bank records for treating one account as Kingman Lambert's "individual account," another account as that of the Lambert Family Trust, and the third account as a joint account of all the family members. The

---

> Trust interests in the same trust deposited in the same account will be separately insured if the value of the trust interest is capable of determination, without evaluation of contingencies, except for those covered by the present worth tables and rules of calculation for their use set forth in § 20.2031–7 of the Federal Estate Tax Regulations....

**3.** Section 330.2 provides in part:

> Funds owned by an individual and deposited in the manner set forth below shall be added together and insured up to $100,000 in the aggregate.
> (a) *Individual accounts.* Funds owned by an individual (or by the community between husband and wife of which the individual is a member) and deposited in one or more depos-

it accounts in his own name shall be insured up to $100,000 in the aggregate.

> (b) *Accounts held by agents or nominees.* Funds owned by a principal and deposited in one or more deposit accounts in the name or names of agents or nominees shall be added to any individual deposit accounts of the principal and insured up to $100,000 in the aggregate.

**4.** Section 330.9 provides in part:

> (a) *Separate insurance coverage.* Deposits owned jointly, whether as point [sic] tenants with right of survivorship, as tenants by the entireties, as tenants in common, or as husband and wife as community property, shall be insured separately from deposit accounts individually owned by the coowners.

bank records conclusively demonstrate that Kingman Lambert signed the three cards in his capacity as trustee of the Lambert Family Trust. Moreover, Lambert admits in his brief that he executed the three signature cards in his capacity as trustee.

In *Jones v. Federal Deposit Ins. Corp.*, 748 F.2d 1400, 1405 (10th Cir.1984), the court held that "under [section 330.1(b)] the status of 'trustee, agent, custodian, or executor' is separately categorized. One who makes a deposit as an 'executor' is not to be considered as a 'trustee,' 'agent' or 'custodian.'" Section 330.1(b)(1) imposes an affirmative obligation to disclose one's status as a condition to a successful insurance claim. Lambert did not disclose on the signature card or on any other bank record that he was acting as an agent. He cannot now claim that he was acting in that capacity.

■ Lambert's attempt to qualify one of the accounts as a joint account for all the family members must also fail. Section 330.9(b) states that "[a] joint deposit account shall be deemed to exist, for purposes of insurance of accounts, only if each coowner has personally executed a deposit account signature card and possesses withdrawal rights." None of the other Lambert family members signed the signature cards. They cannot be considered joint owners of an account.

Section 330.9(c), however, permits additional insurance coverage for jointly owned accounts which fail to meet the requirements of subsection (b). Separate insurance coverage for each joint owner is allowed only to the extent that such owner is a "named person[ ]" on the account signature card.[5] We have already noted that none of the other Lamberts is named on the account signature cards.

### 5. *Testamentary Accounts (12 C.F.R. § 330.3)*

Section 330.3, however, does appear to be applicable to the Lambert Family Trust. Subsection (a) states in part:

Funds owned by an individual and deposited in a revocable trust account ... evidencing an intention that on his death funds shall belong to his spouse, child or grandchild shall be insured up to $100,-000 in the aggregate as to each such named beneficiary, separately from any other accounts of the owner.

■ In order for deposits held pursuant to a revocable trust to qualify for additional insurance under section 330.3(a), the beneficiary must be a spouse, child, or grandchild of the depositor and the account must evidence an intention that, upon the death of the depositor, the funds shall belong to a qualifying beneficiary. If these requirements are met, the interest of each named beneficiary will be insured up to. $100,000. Our inquiry must focus on whether the trust agreement reveals a definite intent that the trust assets "shall belong" to a qualifying beneficiary upon the death of the depositor.

The interests of the beneficiary children, Kristen and Kimberly, are too contingent to meet this requirement. Distribution of the trust assets into three separate trusts, A, B, and C, initially depends upon which trustor dies first. Trust A does not provide for the children. They receive distribution only from Trusts B and C.

If Kingman predeceases his wife, all of their community property in the trust would go into Trust A. Trusts B and C would not be funded. If Cynthia predeceases her husband, only Kingman's share of the community property would go into Trust A. Cynthia's share would be divided between Trusts B and C, but Kingman has the right to invade Trusts B and C if necessary for his support. Thus, there is no assurance that upon the death of either Cynthia or Kingman the funds "shall belong" to the children.

Moreover, Trust A provides the survivor with the right to withdraw all funds during

---

**5.** Subsection (c) provides:

A deposit account owned jointly which does not qualify as a joint account for purposes of insurance of accounts shall be treated as owned by the named persons as individuals

and the actual ownership interest of each such person in such account shall be added to any other accounts individually owned by such person and insured up to $100,000 in the aggregate.

the survivor's lifetime or to appoint the remainder by will. The survivor could withdraw or appoint all of the trust assets so that on his or her death, no funds would be available to move into Trusts B or C.

Because these contingencies could prevent the Lambert children from receiving any part of the trust estate upon the death of the depositor, the FDIC concluded that the trust agreement did not evidence an intention that the funds shall belong to the Lambert children. We agree that the FDIC's interpretation of 12 C.F.R. §§ 330.-10, 330.1(c)(1), 330.2, 330.9, and 330.3 as applied to the Lambert children is reasonable.

■ We conclude, however, that Lambert is entitled to an additional $100,000 insurance coverage based upon the interest of the surviving spouse. The trust agreement clearly intends to benefit the surviving spouse. Regardless of which spouse dies first, Trust A will be funded. If Kingman predeceases Cynthia, Trust A will contain the community property of both spouses. If Cynthia predeceases Kingman, Trust A will contain only Kingman's share of the community property. Therefore, upon the death of Kingman or Cynthia, Trust A will contain at least one-half of the community property of the trust estate. When Lambert filed this claim, the trust estate consisted of community property only, and did not contain any separate property. Section 330.1(c)(3) states that: "Each trust interest in any trust established by two or more settlors shall be deemed to be derived from each settlor pro rata to his contribution to the trust." Thus, each spouse contributed more than $150,000 into the trust.

The FDIC argues that since Cynthia and Kingman were both settlors and potential beneficiaries, it could not determine who would be the ultimate beneficiary. We agree that the question of which spouse will survive is a matter of conjecture. The issue, however, is whether the trust clearly provides that its assets shall belong to a spouse upon the death of the settlor. We believe that it does. Section 330.3 should apply to give each spouse separate insurance coverage.

We hold that the Lambert trust agreement evidenced an intent that upon the death of a spouse, the trust assets shall belong to the survivor. Lambert is entitled to two insured accounts in the sum of $100,000 each.

The summary judgment is REVERSED and the case is REMANDED for further proceedings.