**ABDULLA FOUAD & SONS,**
Plaintiff–Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Defendant–Appellee.

No. 89–2544.

United States Court of Appeals,
Fifth Circuit.

April 19, 1990.

Patricia Hair, Crain, Caton & James, Houston, Tex., for plaintiff-appellant.

Robert S. Cessar, F.D.I.C., Washington, D.C., for defendant-appellee.

Before BROWN, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Abdulla Fouad & Sons ("Fouad") sued the Federal Deposit Insurance Corporation (FDIC) to recover $100,000 damages after FDIC denied additional insurance coverage for funds allegedly deposited by Fouad's agent in Western Bank–Westheimer ("Western"). The district court granted defendant FDIC's motion for summary judgment after concluding that FDIC's administrative action in denying Fouad's insurance claim was "sufficiently reasonable". Upon review of FDIC regulations and the agency determination in this case, we affirm the judgment.

## I.

## FACTS

On May 29, 1986, Allied International Sales Corporation ("Allied") opened a deposit account, number 811828–29, at Western. The account was styled in the name "Allied International/General Account Allied International Sales Corp." The signature card for the account bears the signatures of Allied officers William Scadden and Michael Martin. Additionally, the signature card states: "Depositor(s) also acknowledge that the information on this signature card is correct, as to type of account, features, and all other information." The signature card omits any reference to an agency relationship between Allied and Fouad. Western's deposit account records also included a corporate resolutions authorizing card that bears the name "Allied Intl Sales Corp".

After the Texas Banking Commissioner had declared Western insolvent on October 1, 1987 and FDIC was appointed receiver, FDIC conducted a deposit insured transfer and asset purchase agreement ("DITAPA") of certain Western deposits to Charter National Bank–Houston on October 2. Under this DITAPA transaction, the healthy bank assumed the insured deposits and certain assets of the failed bank. This DITAPA transaction granted depositors immediate access to insured deposits, up to the statutorily covered limit of $100,000.

FDIC, determining the extent of coverage available to Western's depositors under 12 U.S.C. § 1821(a)(1), denied Allied's request that FDIC treat $136,122.22 in account # 811828–29 as a separate insured deposit held by Allied as agent for Fouad. Fouad contends that these identifiable funds were held on behalf of Fouad and were entitled to separate deposit insurance treatment, entitling Fouad and Allied to individual federal "insurance" coverage on this account.

## II.

## ANALYSIS

The district court held that FDIC did not act unreasonably or arbitrarily and capriciously by denying additional insurance coverage for funds allegedly held in an agency relationship where FDIC's denial was based exclusively on the deposit account records of the failed institution. Courts may set aside an agency determination only if it is "arbitrary, capricious, or an abuse of discretion or otherwise not in accordance with the law". 5 U.S.C. § 706 (1988). On this summary judgment appeal, we review de novo the district court's legal conclusion that FDIC's denial of additional insurance coverage was reasonable. *See Lambert v. Federal Deposit Ins. Corp.*, 847 F.2d 604, 606 (9th Cir.1988).

Fouad grounded its claim upon the following allegations: that FDIC incorrectly refused to "recognize Fouad & Sons as an insured of Western Bank" and denied insurance coverage available under 12 U.S.C. § 1822(c); and alternatively, that Western or FDIC lost or replaced records which would reflect the agency relationship between Fouad and Allied. Fouad supported

its claim of Allied's agency status with evidence of an agreement appointing Allied to operate Fouad's United States business interests. Fouad also submitted an affidavit of William Scadden, an Allied Officer which stated that Allied had provided Western with a copy of the agency agreement. Craig Hoskin, a former Western Vice President, stated by affidavit that while he handled Allied accounts as a bank employee, he was aware of an agency relationship between Fouad and Allied. Hoskin also "belie[ved]" that Allied's credit file contained references of an agency relationship with Fouad.

The district court held that based on governing FDIC regulations, this evidence was insufficient for Fouad to prevail on its claim that FDIC's rejection of Allied's insurance claim was arbitrary, capricious or unreasonable. We agree.

■ Congress has defined insured deposits as "the net amount due to any depositor ... for deposits in an insured depository institution ... less any part thereof which is in excess of $100,000." 12 U.S.C. § 1813(m)(1). Congress also authorized FDIC to promulgate regulations to "define the extent of insurance coverage". *See Lambert,* 847 F.2d at 606.

> Such net amount shall be determined according to such regulations as the Board of Directors may prescribe, and in determining the amount due to any depositor there shall be added together all deposits in the depository institution maintained in the same capacity and the same right for his benefit either in his own name or in the names of others....

12 U.S.C. § 1813(m)(1). Additionally, Congress has restricted the class of possible federal deposit insurance claimants by providing that FDIC may recognize ownership of deposit accounts only when held by persons whose name or interest is disclosed on the deposit account records. 12 U.S.C. § 1822(c); *see Lambert,* 847 F.2d at 607.

FDIC regulations accordingly construe these statutes with more specific rules for defining and aggregating the deposit accounts of individual depositors:

> (b) Records. (1) The deposit account records of the insured bank *shall be conclusive* as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian or executor. No claim for insurance based on such a relationship will be recognized in the absence of such disclosure.
>
> (2) If the deposit account records of an insured bank disclose the existence of a relationship which may provide a basis for additional insurance, the details of the relationship and the interests of other parties in the account must be ascertainable either from the records of the bank or the records of the depositor maintained in good faith and in the regular course of business.

12 C.F.R. § 330.1(b)(1), (2) (emphasis added). Section 330.1(b)(1) provides that "deposit account records" are conclusive in determining a relationship on which an insurance claim is founded.[1] Nevertheless, section 330.1(b)(2) allows a claimant to prove "the details of the relationship" and the interest in an account from other qualified records, including bank records or the depositor's records, *if* the "deposit account records" disclose the existence of a relationship. In opening the account and executing the signature card and corporate resolutions authorizing card, the depositor can disclose relevant relationships or interests.

---

**1.** In an informal FDIC interpretive letter, FDIC legal division analyzed section 330.1(b)(1), stating: "Customarily, the account title or an appropriate notation on the deposit account signature cards establishes the existence of an agency, custodial, or fiduciary relationship between the account holder and the beneficial owner(s) of the funds.... It is suggested that the words 'custodial account,' 'as agent for,' or 'escrow account' appear in the account name or be noted on the deposit account signature cards to establish the agency or custodial nature of the account." Priv.Ltr.Ruling, FDIC–86–20, Informal FDIC Interpretive Letter (July 21, 1986); *see also* Priv.Ltr.Ruling, FDIC–89–81, Informal FDIC Interpretive Letter (Dec. 20, 1988) (account title styled as "Escrow Account" indicates fiduciary nature of deposit account).

Three policies undergird FDIC's choice to rely on deposit account records exclusively. First, section 330.1 facilitates FDIC's determination of insurance coverage for deposits in a failed bank. FDIC contends that it must literally make determinations of deposit insurance coverage overnight when it decides to enter into a DITAPA transaction. Likewise,

It is an essential part of the insurance program to make available to the public its insured savings as speedily as possible, rather than to have a family's savings frozen in a closed institution throughout a prolonged period of investigation or litigation. Prompt payment of many thousands of accounts can be made only on the basis of reliance on the account records of the insured institution, and any necessary calculations as to the operation of insurance limits must be able to be made directly from those records.

Scott, Some Answers to Account Insurance Problems, The Business Lawyer 493, 504 (Jan.1968).

A third purpose of these regulations "is to prevent post-default creation of separate trust accounts which would fraudulently increase insurance coverage and to provide the FSLIC with quick access to information necessary to settle insurance claims in an expedient fashion." *Baskes v. Federal Savings & Loan Ins. Corp.*, 649 F.Supp. 1358, 1360 (N.D.Ill.1986) (discussing 12 C.F.R. § 564.2(b), which contains nearly identical language).

Fouad does not dispute these compelling policy reasons behind the reliance of section 330.1 exclusively on deposit account records. Nor does Fouad argue that section 330.1 is fatally inconsistent with 12 U.S.C. § 1822(c). Fouad agrees that FDIC should not disregard the bank's written records and that those records carry a presumption of trustworthiness. *Compare Lambert*, 847 F.2d at 608 (depositor was not allowed to contradict information he had given to a bank identifying three accounts as trustee accounts for the Lambert Family Trust).

■ Appellant contends only that, because section 1822(c) does not require exclusive reliance on deposit account records, FDIC acted arbitrarily and capriciously by refusing to recognize an exception to its rules where, "in limited circumstances, evidence should be considered as to what the written records actually are in the face of incompleteness or inaccuracy."

There is some appeal in Fouad's argument, if only because FDIC, as an insurer, should not be allowed to escape paying the legitimate claims of depositors who relied on its backing of their accounts and on the ability of their banks to fill out deposit records properly. The argument suffers from fatal flaws in this case, however. Fouad does not contend that the bank erred in recording Allied's capacity on the deposit cards when Allied opened the account. Thus, Fouad seeks to go beyond the bank's deposit account records and require FDIC to research the bank's credit files and perhaps other records before it may deny a claim. This position contradicts, rather than supplements, both 12 U.S.C. § 1822(c) and 12 C.F.R. § 330.1.

Because Fouad advocates review of bank records or testimony other than that contained in the deposit account records, it misplaces reliance upon *Jones v. FDIC*, 748 F.2d 1400, 1405 (10th Cir.1984). In that case, referring specifically to deposit account records, the court held:

The bank records, if accurate and complete in reflecting the intention of the depositor conveyed to the bank, are conclusive in the interpretation of the account status. If a depositor challenges the bank records—in this case the two cashier's checks—as to their correctness, there exists a presumption of correctness which may be overcome by proof that the records do not properly and accurately reflect the instructions of the depositor to the bank.

*Id.* at 1405.

*Jones* would appear to permit proof that a federally insured bank did not follow the depositor's instructions as to the proper characterization of an account or ignored a request to correct such an error. It does

not, however, extend beyond proof directed to deposit account records.[2]

■ In any event, Fouad's summary judgment proof was insufficient to support the proposition for which it contends. The agency agreement it produced does not disclose that Allied would hold Fouad's funds as agent in account No. 811828–29 or that Allied would make any deposits at Western on Fouad's behalf. The existence of an agency agreement in the bank's general files, unconnected to ownership of or a beneficial relationship in a deposit account, and not referenced in the bank's deposit account records, is not sufficient to establish a depositor's claimed status.

FDIC's construction of section 330.1(b) is not plainly erroneous. Moreover, because FDIC could locate and rely upon Western's deposit account records for Allied's account and under section 330.1(b)(1) these records are conclusive, we find that FDIC's agency determination was not arbitrary and capricious.

The judgment of the district court is AFFIRMED.

---

2. We note that a depositor may also rely on section 330.1(b)(2) to supplement ambiguous deposit account records. Fouad made no such claim here.