**Coy U. SPAWN, Jr., Plaintiff–Appellant,**

v.

**WESTERN BANK–WESTHEIMER and Federal Deposit Insurance Corporation, Defendants–Appellees.**

No. 90–2236.

United States Court of Appeals, Fifth Circuit.

March 12, 1991.

H. Gray Burks, IV, Houston, Tex., for plaintiff-appellant.

Daniel H. Kurtenbach, Robert S. Cessar, FDIC, Washington, D.C., for FDIC.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Coy U. Spawn, Jr. sued the Federal Deposit Insurance Corporation (FDIC) because it refused to pay deposit insurance on a $100,000 certificate of deposit allegedly owned by Spawn at the insolvent Western Bank–Westheimer. The district court granted the FDIC's motion for summary judgment and entered judgment in favor of the FDIC. We reverse and remand for further proceedings.

## I.

Spawn alleges that in July 1986, he and his sister, Bernadette A. Spawn, each deposited $100,000 into the Western Bank–Westheimer of Houston, Texas. On October 1, 1987, the Texas State Banking Commissioner declared Western Bank insolvent and appointed the FDIC receiver. The FDIC reviewed the Bank's records and found the deposits of the Spawns in the form of accounts for two 91–day certificates of deposit in the amount of $100,000 each. In the first account, the names "Coy U. Spawn, Jr. or Bernadette A. Spawn" were listed under "Depositor" on the deposit receipt and under "Legal Title" on the accompanying signature card. Spawn's social security number was typed in the space for "Tax ID" on the deposit receipt. In the second account, "Bernadette A. Spawn or Coy U. Spawn, Jr." were listed under "Depositor" on the deposit receipt and under "Legal Title" on the accompanying signature card. The social security number of Spawn's sister was typed in the space for "Tax ID." The "Relationship of Signers" section of both signature cards indicated "Joint w/Right of Survivorship."

Spawn has consistently maintained, including by sworn affidavit, that the $100,000 in the first account constituted his solely owned funds and that the $100,000 in the second account constituted the solely owned funds of his sister. According to Spawn, he and his sister took title to the accounts as joint tenants with right of survivorship so that each could bequeath his or her certificate of deposit to the other without the formality of a will and the expense of probate. Their federal tax returns for 1986 reflect that each reported interest income, in different amounts, arising from the respective accounts. Never having filed an answer to Spawn's complaint, the FDIC does not specifically dispute Spawn's claims regarding his and his sister's purpose in setting up these accounts and the separate origin of the funds for each. The FDIC argues instead that such facts have no relevance under its regulations. Looking solely to Western Bank's deposit account records, the FDIC determined that the certificates of deposit were "jointly owned accounts" (a statutory term of art) deserving deposit insurance coverage of no more than $100,000 in the aggregate. Thus, of the $200,000 the Spawns originally deposited in the insol-

vent Western Bank, they recovered only $100,000 from the FDIC.

## II.

■ The parties dispute whether the federal courts should review the FDIC's determination of deposit insurance coverage de novo under *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 1368–71, 103 L.Ed.2d 602 (1989), or under the less demanding "arbitrary and capricious" standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). We have concurrently decided that the latter standard governs analogous cases involving the FSLIC. *See Patrick A. Hymel, CLU & Assocs., Inc. v. FDIC,* 925 F.2d 881, 883 (5th Cir.1991). The reasoning in *Hymel* supports the use of the arbitrary and capricious standard of review here. Consequently, we may set aside FDIC's decision to deny insurance coverage only if it was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). We review the district court's legal determination on summary judgment *de novo. See Abdulla Fouad & Sons v. FDIC,* 898 F.2d 482, 483 (5th Cir.1990).

## III.

■ The statutory backdrop to this case, as it existed when the FDIC was appointed receiver for Western Bank, may be easily summarized.[1] The FDIC holds the assets of the Permanent Insurance Fund, out of which it is required to insure bank deposits up to $100,000. 12 U.S.C. § 1821(a)(1). To enforce the $100,000 limit, the statutes provide that "in determining the amount due to any depositor there shall be added together all deposits in the bank maintained in the same capacity and the same right for his benefit either in his own name or in the names of others." 12 U.S.C. § 1813(m)(1). The FDIC may issue regulations "[f]or the purpose of clarifying and defining insur-

ance coverage under this [provision]." *Id.* The regulations prescribed with respect to "Joint accounts," 12 C.F.R. § 330.9, provide:

(a) *Separate insurance coverage.* Deposits owned jointly, whether as joint tenants with right of survivorship, as tenants by the entireties, as tenants in common, or by husband and wife as community property, shall be insured separately from deposit accounts individually owned by the co-owners.

(b) *Qualifying joint accounts.* A joint deposit account shall be deemed to exist, for purposes of insurance of accounts, only if each co-owner has personally executed a deposit account signature card and possesses withdrawal rights. The restrictions of this paragraph shall not apply to co-owners of a time certificate of deposit or to any deposit obligation evidenced by a negotiable instrument, but such a deposit must in fact be jointly owned.

(c) *Failure to qualify.* A deposit account owned jointly which does not qualify as a joint account for purposes of insurance of accounts shall be treated as owned by the named persons as individuals and the actual ownership of each such person in such account shall be added to any other accounts individually owned by such person and insured up to $100,000 in the aggregate.

(d) *Same combination of individuals.* All joint deposit accounts owned by the same combination of individuals shall first be added together and insured up to $100,000 in the aggregate.

The statutes and regulations boil down to this: a depositor may receive $100,000 of insurance coverage for his individual accounts and may share an additional $100,000 of coverage with the co-owner(s) of his joint accounts. Thus, it is usually to the depositor's advantage for the FDIC to recognize a doubtful account as a joint ac-

---

1. Congress radically revamped the nation's deposit insurance scheme by enacting the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183. The FDIC consequently revised its deposit insurance regulations in 55 Fed.Reg. 20,111 (1990). We will cite the pre-FIRREA versions of the pertinent statutes and regulations.

count.[2] In this unusual case, however, Spawn wished the FDIC to recognize both accounts at Western Bank as individual accounts—each with a different owner. Had he met with success, he and his sister would each have been entitled to $100,000 of insurance coverage and would have recovered the full amount of their deposits. But because the FDIC determined each of the two accounts to be joint accounts, Spawn and his sister fell into the pit of § 330.9(d), which limited their collective insurance coverage to $100,000.

The FDIC based its determination on § 330.9(b). It correctly found, as to each of the two accounts, that both Spawn and his sister "personally executed a deposit account signature card" and that they both "possesse[d] withdrawal rights." Thus, according to the first sentence of that paragraph, the accounts were joint deposit accounts. Neither the FDIC nor the district court, however, considered the paragraph's second sentence, which announces that the "restrictions" of the first sentence "shall not apply to co-owners of a time certificate of deposit ..., *but such a deposit must in fact be jointly owned*" (emphasis added). We read this sentence to plainly establish a different test, irrespective of signature cards and withdrawal rights, for certificates of deposit. According to this test, to qualify as a jointly owned account, a certificate of deposit need not be buttressed by deposit account signature cards or joint withdrawal rights. Such account must, however, be *in fact* jointly owned. Spawn, of course, asserts that under Texas law, he and his sister did not jointly own the two certificates of deposit but rather that each owned one certificate of deposit individually.

The FDIC never determined whether the two accounts were "in fact jointly owned" by Spawn and his sister under Texas law.[3] Rather, the FDIC contends that any fact, to be considered for insurance purposes, must appear on the bank's deposit account records. The FDIC relies prominently on 12 C.F.R. § 330.1(b)(1):

> The deposit account records of the insured bank shall be conclusive as to the existence of any relationship pursuant to which the funds in the account are deposited and on which a claim for insurance coverage is founded. Examples would be trustee, agent, custodian or executor. No claim for insurance will be recognized in the absence of such disclosure.

The FDIC argues that this provision precludes it (and reviewing courts) from examining any source—such as state law or depositor business records—other than the bank's deposit records in order to determine ownership rights in an account. In the narrow circumstances presented by this case, we disagree.

Section 330.1(b)(1) does not apply to this case for three reasons. First, the regulation is aimed at an altogether different problem—the problem of the insurance claimant whose name does not appear anywhere in the records of the failed bank. Congress addressed this issue in 12 U.S.C. § 1822(c): the FDIC shall not "be required to recognize as the owner of any portion of a deposit appearing on the records of a closed bank under a name other than that of the claimant, any person whose name or interest as such owner is not disclosed on the records of such closed bank as part owner of said deposit." Section 330.1(b)(1) implements this statute. For example, a claimant may assert that the named depositor (who has exhausted his insurance cover-

---

**2.** *See, e.g., Lambert v. FDIC,* 847 F.2d 604, 608 (9th Cir.1988) (depositor with essentially identical accounts sought to gain additional insurance coverage by characterizing one account as individual account owned by himself and another as joint account owned by all family members); *Lambert v. FSLIC,* 871 F.2d 30, 32 (5th Cir.1989) (per curiam) (depositor with individual accounts and accounts held in name of his personal proprietorship sought to gain additional insurance coverage by characterizing latter ac-

counts as joint accounts by virtue of Louisiana's community property laws).

**3.** Apart from arguments based upon the regulation we are about to discuss, we doubt the FDIC would contest the use of state law to determine ownership of property "in fact." Indeed, 12 C.F.R. § 330.1(a) contemplates occasions when "rules of local law enter into [insurance coverage] determinations."

age in its individual capacity) was acting as the agent of the claimant in funding the account. If the agency relationship does not appear in the deposit records, the claimant goes away empty-handed. *See Abdulla Fouad & Sons v. FDIC,* 898 F.2d 482 (5th Cir.1990). Or, a claimant may assert that the named depositor was acting as trustee for the claimant. Again, if no trust relationship is mentioned in the deposit records, the claimant receives no coverage. *See Lambert v. FDIC,* 847 F.2d 604, 607–08 (9th Cir.1988). In both of these cases, the courts described § 330.1(b)(1) as construing or implementing § 1822(c). *Abdulla Fouad,* 898 F.2d at 484; *Lambert,* 847 F.2d at 607.

Second, § 330.1(b)(1) on its face does not cover the situation of Spawn and his sister. It deals with establishing the *existence* of a relationship, rather than its *non*-existence. It allows the FDIC to deny claims in the *absence* of a disclosure, rather than in the *presence* of a disclosure. The examples of the relationships covered by the regulation, though not necessarily exclusive, include only fiduciary relationships, rather than any relationships based on common ownership.

Third, because the more general § 330.1(b)(1) conflicts with the more specific § 330.9(b), the latter must control here. While the rule of the former section looks generally to "deposit account records," the rule of the latter section covers only joint accounts and considers only two specific kinds of account record evidence—signature cards and withdrawal rights—except where certificates of deposit are concerned. Presumably, the FDIC would decline to entertain an argument by a claimant who had not executed a deposit account signature card that he should be recognized as a joint account holder by virtue of the deposit records generally. On the other hand, § 330.9(b) acknowledges that "deposit account records" may not be sufficient to determine whether a certificate of deposit is co-owned. Accordingly, it finds joint ownership if such certificate is "in fact"

jointly owned. The certificate of deposit "qualification" to § 330.9(b) is thus specifically divorced from the narrow reliance placed by § 330.1(b)(1) on deposit account records.

In sum, the FDIC's interpretation of the regulations at issue contradicts the unambiguously expressed directions they contain. We may not defer to that erroneous interpretation, which is not "in accordance with the law." 5 U.S.C. § 706(2)(A). Spawn must be permitted to prove that the certificate of deposit at issue, although styled as a joint tenancy with right of survivorship, was in fact an account separately owned by him and separately insurable by the FDIC.[4] Because the facts necessary to Spawn's position were not proved or conceded, we must remand the case for further proceedings.

### IV.

The judgment of the district court is reversed. The case is remanded to determine whether the certificate of deposit was in fact jointly owned by Spawn and his sister.

REVERSED and REMANDED.

---

**4.** In reaching this conclusion, we necessarily reject Spawn's argument that § 330.1(b)(1) is fatally inconsistent with 12 U.S.C. § 1822(c).