United States Court of Appeals,

Fifth Circuit.

No. 92-4707

(Summary Calendar).

Paul V. PALERMO, Petitioner,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.

Jan. 26, 1993.

Petition for Review of Final Determination by the Federal Deposit Insurance Corporation.

Before KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:

In this petition from the administrative procedures of the Federal Deposit Insurance Corporation (FDIC), Petitioner Paul Palermo challenges the FDIC's characterization of his certificate of deposit account (CD) as jointly owned due to the appearance of his mother's name on the signature card and the FDIC's refusal to accept evidence that the CD was in fact individually owned by Palermo. In making its final determination, the FDIC relied on 12 C.F.R. § 330.7, which allows the FDIC to presume conclusively that two signatures on a signature card denotes a joint account. We conclude that the FDIC's interpretation of this regulation as applied to CDs is unreasonable, and therefore we vacate the decision and remand for proceedings consistent with this opinion.

I

FACTS AND PROCEEDINGS

On January 31, 1992, the Office of Thrift Supervision of the United States Department of Treasury closed the Pelican Homestead and Saving Association (Pelican), and appointed the RTC as receiver. Part of the RTC's responsibility as receiver was to determine the insurance coverage available to Pelican's depositors. One of these depositors, Palermo, maintained three accounts at Pelican. Each of these three accounts contains two signatures on the signature card: Palermo's and his mother's. On one of these accounts (the Impaired Certificate) Palermo's name appears first and

only his social security number is listed. On the other two accounts his mother's signature appears first and only her social security number is listed.

Pursuant to its regulations, which are discussed in more detail below, the RTC determined that all three accounts were jointly owned. As a result, their balances were aggregated and subjected to a single $100,000 insurance maximum. The RTC disallowed coverage for the aggregate amount in excess of $100,000, i.e., $25,117.79.[1] Palermo timely filed a proof of claim with respect to the Impaired Certificate, proffering evidence that he alone owned the Impaired Certificate and thus was entitled to its own $100,000 insurance limit.

The RTC refused to accept such extrinsic evidence, relying instead on a provision in its regulations which stated that "[t]he signature of two or more persons on a deposit account signature card shall be conclusive evidence that the account is a joint account unless there is a contrary ownership capacity stated on the signature card."[2] It is this regulation that Palermo seeks to have reviewed.

## II

## STATUTORY BACKGROUND

The statutory scheme governing deposit insurance coverage is complex. We have previously clarified the system by explaining:

> The statutes and regulations boil down to this: a depositor may receive $100,000 of insurance coverage for his individual accounts and may share an additional $100,000 of coverage with the co-owner(s) of his joint accounts. Thus, it is usually to the depositor's advantage for the FDIC to recognize a doubtful account as a joint account.[3]

In the instant case, however, Palermo's claim certainly is not *usual.* Instead of seeking to have his Impaired Certificate classified as jointly owned, Palermo insists just the opposite, i.e., that it is individually owned. The benefits from this position are obvious: If he can persuade the RTC to

---

[1]Specifically, the RTC disallowed coverage for $24,924.13 of the principal balance of the Impaired Certificate and $193.66 of its accrued interest.

[2]12 C.F.R. § 330.7 (1992).

[3]*Spawn v. Western Bank-Westheimer,* 925 F.2d 885, 887-88 (5th Cir.1991) (citations omitted).

classify the Impaired Certificate as an individual account, Palermo would receive a maximum $100,000 coverage on that account plus up to $100,000 more of shared coverage for his joint accounts.

The regulations concerning joint accounts read as follows:

(c) **Qualifying joint accounts.**  A joint deposit shall be deemed to be a qualifying joint account, for purposes of this section, only if:

(1) All co-owners of the funds in the account are natural persons;  and

(2) Each co-owner has personally signed a deposit account signature card;  and

(3) Each co-owner possesses withdrawal rights on the same basis.

The requirement of paragraph (c)(2) of this section relating to account signature cards shall not apply to certificates of deposit, to any deposit obligation evidenced by a negotiable instrument, or to any account maintained by an agent, nominee, guardian, custodian or conservator on behalf of two or more person, but all such deposits must, in fact, be jointly owned.  The signature of two or more persons on a deposit account signature card shall be conclusive evidence that the account is a joint account unless there is a contrary ownership capacity stated on the signature card.[4]

This language represents a change from the previous regulation.  Specifically, the FDIC has added the last sentence to establish a conclusive presumption of joint ownership based on the signature card. The language of that sentence is not directly at issue here.  The issue is how to construe that language in pari materia with the sentence that precedes it.

Although this regulation is new, we have addressed its predecessor in *Spawn v. Western Bank-Westheimer.*[5]  In that case we held that the predecessor regulation "establish[ed] a different test, irrespective of signature cards and withdrawal rights, for certificates of deposit.  According to this test, to qualify as a jointly owned account, a certificate of deposit need not be buttressed by deposit account signature cards or joint withdrawal rights.  Such account must, however, be *in fact* jointly owned."[6]  Thus, the antecedent regulation required the FDIC to consider extraneous evidence

---

[4]12 C.F.R. § 330.7.

[5]925 F.2d at 885.

[6]*Id.* at 888.

submitted to prove that the CD in question was in fact individually—not jointly—owned.[7] Therefore, one question we must consider in our analysis is to what extent *Spawn* still applies in light of the amendments made to the regulation.

III

INTERPRETATION OF THE REGULATION

A. STANDARD OF REVIEW

By statute the FDIC has authority to promulgate regulations governing the extent of deposit insurance coverage.[8] The RTC's denial of insurance coverage pursuant to these regulations is a decision "reviewed according to the Administrative Procedure Act and may only be set aside if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[9] Clearly we may not defer to an erroneous interpretation that is not "in accordance with the law."[10]

B. INTERPRETATION OF THE REGULATION

In its brief, the FDIC focuses primarily on Palermo's criticism of the FDIC's informal procedures that deprived him of the opportunity to present his extraneous evidence regarding ownership of the CD. The FDIC construes this as a due process attack and responds accordingly. Palermo, however, does not pursue a due process claim so we need not address that issue. As Palermo acknowledges in his statement of the issues, the sole question in this case is whether the RTC

---

[7]The previous regulation reads as follows:

> (b) **Qualifying joint accounts.** A joint deposit account shall be deemed to exist, for purposes of insurance of accounts, only if each co-owner has personally executed a deposit account signature card and possesses withdrawal rights. The restrictions of this paragraph shall not apply to co-owners of a time certificate of deposit or to any deposit obligation evidenced by a negotiable instrument, but such a deposit must in fact be jointly owned.

12 C.F.R. § 330.9 (1992).

[8]12 U.S.C. § 1813(m)(1) (1988). These regulations are found in 12 C.F.R. Part 330.

[9]*Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 244 (5th Cir.1992) (citing *Patrick A. Hymel, CLU, & Assoc. v. FDIC,* 925 F.2d 881, 883 (5th Cir.1991) and *Abdulla Fouad & Sons v. Federal Deposit Ins. Corp.,* 898 F.2d 482, 483 (5th Cir.1990)).

[10]5 U.S.C. § 706(2)(A) (1988).

was required as a matter of law to accept evidence demonstrating the absence of factual joint ownership.

After its discussion of the phantom due process claim, the FDIC attempts to dispose of Palermo's substantive claim—that he should have been allowed to admit evidence showing individual ownership of the Impaired Certificate—by insisting that the RTC has no obligation to accept extrinsic evidence, citing regulations that allow it to determine ownership solely from the depository institutions's deposit account records.[11] The necessity of this approach, according to the FDIC, is that it and the RTC cannot consider the extrinsic evidence due to time constraints. According to the FDIC, Congress intended that both agencies be able to move quickly to avoid disruptions in the failed institutions. In response to Palermo's claim involving *Spawn* and § 330.7, the FDIC simply restates that portion of the regulation establishing a presumption based on the signature card and states that we owe deference to its interpretation.

We do not quarrel with the FDIC's statements. The question remains, however, whether they dispose of this case. There is no doubt that the statutory scheme does not require the RTC to consider ext rinsic evidence in most cases. As we held in*Spawn,* however, the regulation at issue requires special handling of specified types of accounts among which are CDs. In that case we held that this specific requirement established a different test, one not involving signature cards. Therefore, in *Spawn* the FDIC could not rely on the argument that extraneous evidence was irrelevant—the very same argument it makes today. The issue of this appeal, properly defined, is whether the FDIC has negated this requirement by adding a presumption based on the signature cards. We conclude that it has failed to do so.

We do not reach our ultimate conclusion, however, without some difficulty. Our concern implicates two points. First, as we held in *Spawn,* the language requiring that CDs "must in fact be jointly owned" creates a separate test, devoid of any consideration of signature cards. The new

---

[11]12 C.F.R. § 330.4(a). Deposit account records are defines as "account ledgers, signature cards, certificates of deposit, ... and other books and records of the insured depository institution, including records maintained by a computer, which relate to the insured depository institution's deposit taking function, but does no mean account statements, deposit slips, items deposited or cancelled checks." 12 C.F.R. § 330.1(d).

regulation retains the "in fact" language, but attempts to negate it by creating a presumption based on evidence contained *on the signature cards.* Yet, if the joint ownership of CDs may be proven without reference to signature cards, an exception involving such cards will, by the regulation's own terms, have no effect. In other words, the regulation states expressly that the signature card requirement "shall not apply" to CDs; yet, in the next sentence, the regulation states that the RTC may rely solely on the contents of the card to determine ownership. These two statements are irreconcilable; there is no way for them to stand together.

Second, were we to adopt the FDIC's interpretation of the regulation, we would effectively render nugatory the requirement that CDs in fact be jointly owned. If ownership could be determined solely on the basis of a signature card, without any reference to evidence of actual ownership, then there would be no absolute requirement of actual ownership. The FDIC's reading of the regulation ignores totally the general rule's express exception governing CDs.

Section 330.7 is an inartfully drafted provision, internally inconsistent, ambiguous, and irreconcilable. Faced with the undeniably clear requirement of actual ownership of CDs, however, we have no choice but to conclude that the FDIC was not reasonable in adopting its interpretation that the signature card could provide a conclusive presumption of actual ownership. To read the regulation in such a manner is to ignore completely the actual ownership requirement. Actual ownership can be shown only by admitting proof not contained in the signature card. Therefore, the final determination of the FDIC is vacated and the decision is remanded to allow Palermo to introduce evidence demonstrating his actual sole ownership of the CD.

VACATED and REMANDED.