United States Court of Appeals,
Fifth Circuit.

No. 93-1253,

Summary Calendar.

Janet M. POOL, Plaintiff-Appellant,

v.

RESOLUTION TRUST CORPORATION, et al., Defendants,

Resolution Trust Corporation, Defendant-Appellee.

Feb. 10, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, JOLLY, and JONES, Circuit Judges.

PER CURIAM:

In its clean up of the massive fraud and misfeasance in the savings and loan industry, the Resolution Trust Company ("RTC") must make difficult decisions about who will and who will not be covered by deposit insurance. These determinations are generally left to the discretion of the RTC. The RTC's conclusions are, however, reviewable under the Administrative Procedure Act, 5 U.S.C. § 706, permitting reversal where the decision is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 244 (5th Cir.1992).

In the present case, the RTC has interpreted the deposit insurance regulations relating to the definition of joint accounts in accordance with the law and the result cannot be said to be an abuse of discretion. Therefore, we refuse to grant appellant's petition for review.

I. Facts and Procedural History

Janet M. Pool, the appellant in this litigation, initiated this proceeding after the RTC's summary denial of her claim for insurance coverage. Pool complains that when Resource Savings Association ("Resource") became insolvent and was taken over by the RTC, the RTC wrongfully refused to provide deposit insurance on a certificate of deposit worth $99,000 which Pool had

established with Resource.

The RTC bases its denial of insurance coverage on the Federal Savings and Loan Insurance Corporation ("FSLIC") regulations that apply to deposits made prior to enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). FIRREA states that prior to its effective date, "any determination of the amount of any insured deposit ... shall be made in accordance with the regulations and interpretations of the Federal Savings and Loan Insurance Corporation ... which were in effect on the day before the date of the enactment of this Act." Pub.L. No. 101-73, § 402(c)(1), 103 Stat. 183, 358 (1989).

The applicable FSLIC regulations declare that "[f]unds held in an account in the names of two or more persons, each possessing equal withdrawal rights, shall be insured as a joint account...." 12 C.F.R. § 564.9(a) (1989). It is uncontested that Pool established, using her own funds, a certificate of deposit that was held with her sister and parents "jointly with right of survivorship." Therefore, the signature cards on Pool's account showed the names of Pool herself, her sister, and her parents, and all of these people had equal rights of withdrawal. *See* 12 C.F.R. § 564.9(b) (rights of withdrawal are deemed equal unless the institutions records specify otherwise).

Pool claims that she set up the account in this manner to ensure that the funds would pass to her family immediately upon her death, thus avoiding the time and expense of probate. Pool argues that because the certificate of deposit was established with her separate funds, under Texas law, she was the sole owner of the account. *See RepublicBank Dallas v. National Bank of Daingerfield,* 705 S.W.2d 310, 311 (Tex.App.—Texarkana 1986) (sole ownership maintained even where other party shared rights of withdrawal).

Janet Pool's sister, Katherine, also established a certificate of deposit at Resource in the amount of $99,000. Katherine Pool similarly set up this account using her separately owned funds. Katherine also arranged the deposit such that her parents and Janet were named on the signature card and possessed equal rights of withdrawal.

The RTC, looking only at the withdrawal rights and signature cards, determined that Janet and Katherine's certificates of deposit were joint accounts for purposes of § 564.9(a). The RTC

proceeded to apply 12 C.F.R. § 564.9(e)(1) which states that, "[a]ll qualifying joint accounts held by the same combination of persons shall be added together and insured up to $100,000 in the aggregate." The RTC concluded that the Pools were entitled to $100,000 aggregate coverage for both Janet and Katherine's two certificates of deposit. The RTC determined that since these were jointly owned accounts, the Pools would not be entitled to deposit insurance on funds in the amount of $98,759.46.

Janet Pool requested redetermination by the RTC. The RTC evaluated Pool's request and refused to increase the insurance coverage provided. Upon this denial, Janet Pool filed suit in the Northern District of Texas. The district court transferred the petition for review to this court pursuant to 28 U.S.C. § 1631. We have proper jurisdiction over this case under 12 U.S.C. § 1821(f)(4) giving courts of appeal jurisdiction to review final determinations by the RTC. *See Nimon,* 975 F.2d at 244 (Congress plainly intended the court of appeals to be "the fora of these reviews").

II. Analysis

Pool complains that the RTC wrongfully denied her insurance coverage on the certificate of deposit. She argues that the actual ownership status of the deposit should control the determination of joint ownership, not withdrawal rights and signature cards. In support of her contention, Pool points to the Appendix to Section 564 which states that the rules in this section:

> are predicated upon the assumption that invested funds are actually owned in the manner indicated on the institution's records. If available evidence shows that ownership is different from that on the institution's records, the Federal Savings and Loan Insurance Corporation may pay claims for insured accounts on the basis of actual rather than ostensible ownership.

12 C.F.R. Part 564, Appendix at 482 (1989). Because it failed to inquire into the actual ownership of the sisters' respective accounts, Pool asserts that the RTC mistakenly determined that the two accounts were jointly held. Pool observes that other courts looking at the same section have previously held that, "[t]his appendix makes it clear that insurance claims should be determined on the basis of *actual* rather than *ostensible* ownership." *Kayser v. Fed. Sav. and Loan Ins. Corp.,* 718 F.Supp. 815 (N.D.Cal.1989) (emphasis in original); *Jugum v. Fed. Sav. and Loan Ins. Corp.,* 637 F.Supp. 1045 (W.D.Wash.1986).

Pool additionally points out that in the Federal Deposit Insurance Corporation ("FDIC")

context, this circuit has interpreted the joint ownership provisions of the bank deposit insurance regulations to require that where two accounts are actually separately owned (i.e. separately owned for state law purposes), the accounts will be considered to be individually owned for purposes of deposit insurance coverage. *See Spawn v. Western Bank-Westheimer* 925 F.2d 885 (5th Cir.1991); *Palermo v. Federal Deposit Ins. Corp.,* 981 F.2d 843 (5th Cir.1993). Bank deposits can be separately insured even where the accounts evince equal rights of withdrawal and the signature cards reciprocally name the parties. *Spawn,* at 888 (withdrawal rights and signature cards irrelevant if actual ownership is in fact separate); *Palermo,* at 846-7 (same).

While these courts were willing to construe the deposit insurance regulations broadly in favor of depositors, in this case, the regulations do not permit such a beneficent interpretation. A close look at the preamble to the appendix relied upon by Pool reveals that this section is merely a general introduction which does not rise to the level of mandatory pronouncements obligating the RTC. In addition, the cases which Pool cites do not apply to the present circumstances where the regulation's definition of joint accounts unambiguously states that withdrawal rights and signature cards are sufficient for a finding of joint account status.

While it is true that the appendix generally states that the RTC should look to actual ownership in making the determination of insurance coverage, a specific section of the Appendix follows this statement which explains that "[s]tate law is not determinative of the amount of joint account insurance coverage." 12 C.F.R. Part 564, Appendix at 488 (1989). In the context of deposit insurance regulations, we have previously applied the principle of interpretation that more specific language in a regulation will control over more general statements of policy. *See Spawn,* 925 F.2d at 889. Therefore, the specific joint account section of the appendix exempts the RTC from looking to state law in making the determination and thereby precludes this court from following the language pointed to by Pool.

We also note that the language relied on by Pool cannot be given decisive force because to do so, we would have to decide that all determinations of insurance coverage would require that the RTC look beyond the records of the financial institution in all deposit insurance determinations in a

search for the actual ownership status of all deposits. This is so because the appendix refers to the entire code section on determinations of insurance coverage. *See* 12 C.F.R. Part 564, Appendix at 482 (1989) (Title of Appendix "Examples of Insurance Coverage Afforded Accounts in Institutions Insured By the Federal Savings and Loan Insurance Corporation"). Interpreting the appendix as urged by Pool would thereby directly contradict the basic intent of much RTC jurisprudence permitting the RTC to rely exclusively on deposit records in salvaging failed savings and loans. *See Abdulla Fouad & Sons v. Federal Deposit Ins. Corp.,* 898 F.2d 482 (5th Cir.1990) (setting out various policy rationales for allowing the RTC to depend solely on a bank's deposit records in determining the extent of deposit insurance). To give such a strong effect to the words of the appendix would essentially cripple an important tool employed in the RTC's rescue of failed savings and loans.

Turning to the *Spawn* and *Palermo* decisions, we note that these cases are simply not relevant to the present situation because cases applied regulations covering the FDIC, not the FSLIC. The particular regulations which govern in the instant case differ in a crucial respect from those under scrutiny in those decisions. Both *Spawn* and *Palermo* were based on 12 C.F.R. § 330.9(b), a regulation which governs the deposit insurance of banks. The regulation states that a joint certificate of deposit need not be evidenced by signature cards or joint withdrawal rights, "but such a deposit must in fact be jointly owned." 12 C.F.R. § 330.9(b) (1989). The court based its holding on the requirement of "in fact" ownership, compelling the FDIC to look to Texas law in order to determine whether the certificates of deposit under consideration were jointly owned for purposes of deposit insurance. *Spawn,* 925 F.2d at 888; *Palermo,* 981 F.2d at 845. We held in *Palermo* that the "in fact" jointly owned language in the regulation was sufficient to override an inconsistent provision declaring that joint ownership would be presumed in the face of signature cards and equal rights of withdrawal. *Id.* at 846.

The language of the regulation which must be applied to this case will not admit of the sort of pro-depositor interpretation propounded by this circuit in *Spawn* and *Palermo.* The regulation applicable to this case specifically states that where an account is established in the names of more

than one person each possessing equal withdrawal rights, the account, "shall be insured as a joint account, unless the account records disclose that the named persons are holding funds in a different capacity." 12 C.F.R. § 546.9(a) (1989). By different capacity, the regulations are referring to an agency, custodial or trust relationship. Because there is no allegation that the funds were held in any such capacity, the regulations are clear that Pool's certificates of deposit are jointly owned and that actual or "in fact" ownership is simply not relevant to the determination.

Because the regulation under question in the present case lacks any of the "in fact jointly owned" language of these other decisions, or any other reference to state law ownership, the holding of those cases does not apply. The regulation in this case does not even evidence the ambiguity and inconsistency of language which allowed the court in *Palermo* to construe the regulation in the depositor's favor. It is clear for our purposes that the FSLIC regulations on insurance coverage require joint account status for all accounts which show the names of more than one person on the signature card and in which each person possesses equal withdrawal rights.

The RTC has complied with the letter of the FSLIC regulations in this case, and thus no complaint for abuse of discretion or arbitrary or capricious administrative activity will lie.

III. Conclusion

For the preceding reasons, the petition for review is DENIED.