## JONES v. FEDERAL DEPOSIT INS. CORPORATION (two cases).

### Nos. 6078, 6079.

District Court, W. D. Oklahoma.

Sept. 28, 1938.

Scarritt & Champlin, of Enid, Okl., for plaintiffs.

Everest, McKenzie & Gibbens, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

Each of the above styled cases is based upon the same state of facts and by stipulation have been consolidated for purposes of trial, therefore, this opinion will dispose of both cases.

The plaintiff Emma M. Jones alleges that on the 13th day of December, 1927, she deposited in the First State Bank of Cheyenne the sum of $10,000 as an interest bearing demand deposit. That thereafter and on or about September 29, 1934, she withdrew $5,000 leaving a balance on deposit in the sum of $5,000; that no portion of said deposit has ever been withdrawn by Emma M. Jones and that she is not indebted to the First State Bank of Cheyenne in any sum; that said deposit is covered by the insurance policy issued by the defendant corporation, guaranteeing deposits in said bank, and she prays judgment for $5,000 with interest thereon from date of judgment and for the costs of this action.

In the second case, number 6079, Ray Jones alleges in his petition that on the 29th day of September, 1934, he deposited the sum of $5,000 in the First State Bank of Cheyenne as an interest bearing demand deposit; that same has not been withdrawn, altered or modified at any time by this plaintiff or any person acting in his behalf; that he is not indebted to said bank in any sum; that said deposit is covered by the insurance policy issued by the defendant corporation guaranteeing deposits in said bank, and the plaintiff, Ray Jones, prays judgment for $5,000 against the defendant together with interest at 6% from date of judgment, and for the costs of this action.

The evidence in this case discloses the following state of facts: Ray Jones and his wife, Emma M. Jones have been married since 1900. Emma Jones had a separate estate which she inherited from her father and mother. Ray Jones was a very substantial farmer and stock dealer. In all of these years he has kept his account and his wife's account separately. He has never used any of his wife's money in his speculations but from time to time has made investments for her and he had her authority to use her money for such purposes. They formerly lived in McPherson, Kansas but moved to Elk City about 1926. They both carried accounts in the bank at McPherson, Kansas and in the First National Bank of Elk City, Oklahoma. They both had substantial deposits in the Elk City bank on which they were receiving interest at the rate of 5% on their daily balances. About the 1st of December, 1927, A. L. Thurmond, president of the Elk City bank, advised Mr. Jones that he would not be able to continue to pay 5% on daily balances but would be compelled to reduce the rate of interest to 4%. Jones told Thurmond that he was not sure that he wanted to leave the money at 4% but

would let him know. Thurmond also advised Jones that the First State Bank of Cheyenne was paying 5% on deposits and that the Cheyenne bank would accept $10,000 at 5%. Jones told Thurmond that he would let him know a little later and sometime prior to the 8th of December, 1927, after discussing the matter with his wife, he advised Thurmond that he could make a deposit for Mrs. Jones of $10,000 in the Cheyenne bank and authorized him to draw $10,000 from his wife's account and deposit it in the First State Bank of Cheyenne upon the terms indicated. Thurmond advised him that he would do so and immediately thereafter transferred $10,000 from the bank at Elk City to the bank at Cheyenne and on the 8th day of December, 1927 a deposit ticket was issued by the First State Bank of Cheyenne to Emma M. Jones, showing a deposit in said bank by Emma M. Jones of $10,000. This deposit ticket was sent by the First State Bank of Cheyenne to the Elk City bank for Emma M. Jones and was delivered by Thurmond to Ray Jones, who delivered it to his wife, Emma M. Jones. The interest was paid on this deposit, quarterly, to Emma M. Jones up to the 29th day of September, 1934, and in each instance, the interest checks were sent by the Cheyenne bank to the First National Bank of Elk City, which latter bank deposited the interest payments to the credit of Emma M. Jones and issued a deposit ticket to Emma M. Jones and delivered same to her.

Prior to the 29th of September, 1934, in a transaction at McPherson, Kansas, Ray Jones had used in excess of $4,000 of his funds in completing a loan of $7,000 for Emma M. Jones. He had advanced other amounts to his wife so that she owed him approximately $5,000 at that time. Jones and his wife agreed between themselves that she would transfer $5,000 in the First State Bank of Cheyenne from Emma M. Jones to Ray Jones, and Ray Jones met I. C. Thurmond, who was connected with the Cheyenne bank, at Elk City and advised him of their desire. Thurmond immediately communicated with the bank at Cheyenne and advised them of the desire of Emma M. Jones, and on the 29th of September, 1934, the Cheyenne bank did transfer $5,000 from the account of Emma M. Jones to the account of Ray Jones. There was introduced in evidence in the trial of these cases, the ledger sheets of the First State Bank of Cheyenne showing the ac-

count of Emma M. Jones charged with a check of $5,000, leaving a balance in her account of $5,000 on September 29, 1934. On the same date, as shown by a ledger sheet from the First State Bank of Cheyenne, an account was opened with Ray Jones showing a deposit to his account of $5,000. The bank at Cheyenne paid interest to Emma M. Jones and Ray Jones, respectively, on said deposits up to the date the bank closed.

From the record in this case, there is nothing irregular or unusual in the manner in which these deposits were handled.

The bank at Cheyenne was closed on the 25th of March, 1935. On the second day after the bank had been closed, it was opened up to pay off the depositors. Ray Jones and Emma M. Jones went to the Cheyenne bank and asked for the payment of their deposits. Whereupon they were advised that they had no money there; that there were no records in the bank showing a deposit either to Ray Jones or to Emma M. Jones. They stated the circumstances to Mr. Thomason, who was in charge of the failed bank, and they made out and signed affidavits setting forth the facts as have been hereinbefore enumerated.

There is no question about the deposits having been made and the bank recognized the deposits as valid and paid interest on the deposits up to the time the bank closed.

It developed from the testimony of E. H. Kelly, a bank examiner of the state banking department of Oklahoma, that because of his various examinations of the bank, he was acquainted with the deposits of Emma M. Jones and Ray Jones and during said examinations of the bank found these deposit records, as contended for by the plaintiffs.

It appears, however, that in keeping with the manner in which the banking business of this institution was conducted, little regard was shown for the rights of the depositors and the accounts were handled as the management of the bank saw proper. The money in these two accounts was dissipated by the bank as shown by this evidence, and the ledger sheets were actually taken out of the active banking records and placed among the inactive records where they were discovered by the examiners after the closing of the bank.

The defendant in its answer in this case denies that either of these plaintiffs at the time of the closing of the bank had

a deposit of $5,000 or any other amount in said bank. The court finds from the evidence, however, that each of these plaintiffs did have a deposit of $5,000 in said bank at the time it was closed, there being no evidence whatever to the contrary, and at the time said bank was closed, it was indebted to each of the plaintiffs in the sum of $5,000.

The court further finds that the insurance policy of the defendant insurance corporation covers these deposits and that said insurance corporation is liable to the plaintiffs therefor, and the plaintiffs are each entitled to judgment in the sum of $5,000 and for interest at the rate of 6% from this date.

A form of judgment together with findings of fact and conclusions of law, consistent with this opinion, may be submitted within fifteen days. An exception is allowed to the defendant in each case.