## FEDERAL DEPOSIT INS. CORPORATION v. RECORDS et al.

### No. 258.

District Court, W. D. Missouri, W. D.

Aug. 9, 1940.

Jerome Walsh, of Kansas City, Mo., for plaintiff.

Winger, Reeder & Barker, of Kansas City, Mo., Burrus & Burrus, of Independence, Mo., Johnson, Garnett & Quinn, of Kansas City, Mo., John D. Strother, Llewellyn Jones, and A. B. Taylor, all of Independence, Mo., and Warren E. Slagle, of Kansas City, Mo., for defendants.

OTIS, District Judge.

Federal Deposit Insurance Corporation, plaintiff here, on January 12, 1934, insured the deposits in the Blue Springs State Bank of Blue Springs, Missouri, from and after December 15, 1933. The Blue Springs State Bank on June 25, 1932, entered into

contracts with the Bank of Blue Springs and with the Citizens State Bank of Blue Springs. (The last two mentioned banks hereinafter will be designated as the "old banks" and plaintiff as FDIC). By the terms of these contracts the Blue Springs State Bank assumed all the liabilities of the "old banks" due the respective depositors and other creditors (except tax liabilities).

The Blue Springs State Bank was closed June 8, 1935. There were then asserted against FDIC numerous claims by persons who alleged that they had deposits in various amounts in the Blue Springs State Bank which were covered by FDIC insurance.

Plaintiff has brought this proceeding for a declaratory judgment as to its liability vel non on the several claims asserted. Each of the present owners of the various claims has asserted a counter-claim against FDIC for the amount claimed to be due.

Most of the claims asserted (a few of a different nature will be separately discussed) were of the character now described. X offered for deposit in one of the "old banks", let us say, for illustration, $1,000. He would hand that amount to the cashier of the bank who would enter it in X's passbook and return the passbook to X. The cashier, however, instead of making an appropriate entry in the bank ledger and putting the $1,000 he had received in the safe, would put it in his own pocket and so embezzle it. This transaction was with the "old bank," before the date when the Blue Springs State Bank assumed the liabilities of the "old bank." X never at any time withdrew the amount deposited by him, either from the "old bank" or from the Blue Springs State Bank. When the Blue Springs State Bank was closed he made claim against FDIC for the amount of his deposit of $1,000.

■ The only question presented is whether X had a deposit in the Blue Springs State Bank which deposit was insured by FDIC. But this does not seem to me to be any question at all. Of course X had a deposit with the Blue Springs State Bank which was insured by FDIC.

■ The act creating FDIC defines the word "deposit" as used in that act as follows: "The term 'deposit' means the unpaid balance of money or its equivalent received by a bank in the usual course of business and for which it has given or is obligated to give credit to a commercial, checking, savings, time or thrift account, or which is evidenced by its certificate of deposit, and trust funds held by such bank whether retained or deposited in any department of such bank or deposited in another bank, together with such other obligations of a bank as the board of directors shall find and shall prescribe by its regulations to be deposit liabilities by general usage * * *." 12 U.S.C.A. § 264(c) (12).

While this definition was not written in the act at the time the Bank of Blue Springs was insured, it was written in the act long before any claims involved in this proceeding were asserted and is applicable to those claims. Moreover, the definition was not intended to change or modify the law but to express the congressional interpretation of the meaning of the word "deposit" as it existed in the act from the beginning.

My reasoning for the conclusion that the deposit of X was insured is this. 1. X had a deposit in the "old bank" when he handed his money to the cashier and received an entry in his passbook. He had then done all that it was possible for him to do. From that moment he was a depositor, whether the ledger of the bank evidenced the fact or not, whether the officer of the bank embezzled the money or not. 7 C.J. 637; 9 C. J.S. Banks and Banking, § 271. 2. Certainly if FDIC had insured the "old bank" the insurance would have covered X's deposit as well as other deposits. 3. The Blue Springs State Bank assumed the liabilities of the "old bank." When that fact was agreed to (in the agreed statement of facts referred to hereinafter), necessarily it was agreed that the liabilities, when assumed, should be of the same nature and character as the liabilities of the "old bank." The deposit liability of the "old bank" to X became then a deposit liability of the Blue Springs State Bank to X. The liability of the Blue Springs State Bank to any depositor of the "old bank" could not possibly be affected by the fact that the liability of the "old bank" did not happen to be set up on the ledger of the "old bank." 4. FDIC having insured the deposit liabilities of the Blue Springs State Bank, it insured the deposit liability of the Blue Springs State Bank to X.

Really there has been no contention made by learned counsel for FDIC which contravenes what thus far has been said in this memorandum. No case has been cited which holds that such a deposit as that of

**X** in the hypothetical situation supposed would not be an insured deposit.

Several of the claims that were asserted were of a different character than that which just has been discussed. I refer briefly to those claims and to my reason for disallowing them.

■ The S. H. Gwinn, Sr., claim for $4,000 and $280 interest (Gwinn claim No. 1 for $67.11 is allowed) is bottomed on a letter signed by an officer of the "old bank", who also was an officer of the Blue Springs State Bank, as follows: "This is to certify that Samuel H. Gwinn and Della M. Gwinn, his wife, have loaned to the Blue Springs State Bank $5000.00 at 7% interest from September 1, 1932."

A credit on this alleged loan in the amount of $1,000 is deducted, leaving the $4,000 with which interest is now claimed. There is no admission of fact that any such loan ever was made and no proof that any such loan ever was made. If there had been proof that the loan was made, it certainly would not constitute a "deposit" within the meaning of the definition above set out.

■ The Georgia Lee Tatum claim for $2,700 (Georgia Lee Tatum claim No. 1 for $72.84 is allowed) has no sufficient foundation. The agreed statement of facts sets up only that: "Defendant asserts a claim for $2700.00 which she alleges was left by her in trust with Thomason (an officer of the old and new bank) with instructions to invest the same as his judgment indicated."

■ The J. Burke Powell claim (the claim is now owned by Fidelity & Deposit Company of Maryland) has no sufficient foundation. The agreed statement of facts shows that certificates of deposit had been issued to one George McDonald. McDonald was a real person, not a fictitious person. The certificates of deposit were exhibited to McDonald and thereafter demanded by McDonald. McDonald's endorsement was forged on the back of the certificates of deposit and the proceeds credited on the books of the bank to the Richard Powell account in the bank. So far as Richard Powell was concerned, however, the agreed statement of facts shows that this transaction was a pure fiction and that Powell was in no true sense a depositor in the Bank of Blue Springs. The fictitious deposit to Powell's credit was not insured.

■ The N. A. Harris claim (the claim is now owned by the Fidelity & Deposit Company of Maryland) has no sufficient foundation. The fact that the executor of an estate in his settlement in probate court sets up that there is a balance due the estate and that that balance is on deposit in a given bank certainly constitutes no proof against FDIC that there is or was such a deposit, in the absence of any entry either upon the books of the bank or upon some passbook indicating such a deposit had been made.

■ The Stanley E. Gregg claim (the claim is now owned by the Fidelity & Deposit Company of Maryland) has no sufficient foundation. The suggested basis for the claim, namely, that an officer of the insured bank, in his individual capacity and not as an officer of the bank, appropriated certain notes and cash belonging to an estate for which he was trustee, certainly cannot make the owner of those notes a depositor in the insured bank.

■ Another item in the Gregg claim is for $39.68. There is no sufficient foundation for that claim. In the agreed statement of facts it is said that "R. W. McGuire, cashier of the bank (that is, the Blue Springs State Bank), certified to this defendant (that is, to Stanley E. Gregg) that W. I. Thomason had on deposit the sum of $39.68 to the credit of Mary C. Bridges." Certainly that fact constitutes no proof against FDIC that $39.68 was on deposit in the Blue Springs State Bank to the credit of Mary C. Bridges and, therefore, an insured deposit. The agreed statement does not attest that there was any such deposit but only that McGuire said that Thomason had on deposit somewhere the sum of $39.68 to the credit of Mary C. Bridges.

### Conclusions of Law

■ 1. This court has jurisdiction of this case for that it arises under a law of the United States and involves more than $3,000, exclusive of interest and costs. The joinder of the several defendants in this single proceeding is authorized by Rule 20(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

2. FDIC insured and is obligated to pay the following deposits to the claimants therefor: the C. D. Lowe claim in the amount of $2,560; the W. D. Clark claim in the amount of $800; the Charles F. Faulconer claim in the amount of $1,029.-

86; the Phoebe Hill Corn claim in the amount of $2,439.83; the Mrs. S. M. Johnson claim in the amount of $2,400; the Ambrose C. Milton claim in the amount of $121.77; the Calvin D. Dillingham claim in the amount of $432.77; the A. D. Porter claim in the amount of $447.09; the D. M. Dillingham claim in the amount of $153.14; the D. M. Dillingham, as executor, claim in the amount of $580.77; the Cora Hartsell Smith claim in the amount of $2,486.19; the Georgia Lee Tatum claim in the amount of $72.84; the Mary C. Bridges claim in the amount of $222.78. FDIC is not obligated, except as herein set out, upon any of the claims referred to in the petition for a declaratory judgment and in the several counter-claims.

3. The counter-claims of the defendants, in so far as they refer to the liabilities of FDIC established in the immediately preceding conclusion of law, should prevail. The counter-claims of defendants not so established should not prevail.