United States Court of Appeals,

Fifth Circuit.

No. 92-4953

Summary Calendar.

James B. KERSHAW, Sr. and Bessie M. Kershaw, Petitioners,

v.

RESOLUTION TRUST CORPORATION, Respondent.

April 13, 1993.

Petition for Review of a Decision of the Resolution Trust Corporation.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

Petitioners Mr. and Mrs. James B. Kershaw, Sr., seek review of RTC's denial of deposit insurance coverage as to $52,246.49 deposited in a failed savings institution. We deny the petition for review.

Petitioners had three certificates of deposit at First Federal Savings and Loan Association of Scotlandville, Louisiana. In the spring of 1990, First Federal's records indicated the account holders of these certificates as (1) Mr. Kershaw for Mrs. Kershaw, Beneficiary; (2) Mrs. Kershaw for Mr. Kershaw, Beneficiary; and (3) Mr. and Mrs. Kershaw. During May 1990, petitioners were contacted by two employees of First Federal, Yvonne Jackson and Henry Stamper. Jackson and Stamper informed petitioners that a portion of their funds might be without adequate deposit insurance protection and advised them to meet with Jackson. Petitioners immediately did so and accepted Jackson's recommendations for changing their accounts. Petitioners claim that an agent of RTC, then conservator of First Federal, approved these changes.

The first two accounts were changed to denote Mr. "or" Mrs. Kershaw as account holders. One listed Mr. Kershaw's name before the conjunction; the other listed Mrs. Kershaw's name first. These two accounts held a total balance of $51,838.96. The third account was changed to denote Mr. "and" Mrs. Kershaw as account holders. It contained $100,407.53. The records on which these

name changes were made listed for each account the ownership code 02; 02 indicated joint ownership.

First Federal had been placed into RTC conservatorship in March 1989. According to a RTC document, RTC's managing agent had direct control of all activities and functions of the institution until it was closed. On August 17, 1990, First Federal was declared insolvent and placed in receivership. Soon after, petitioners contacted RTC officials about their accounts. Petitioners were advised that they could not withdraw more than $100,000. On August 27, 1990, petitioners filed a proof of claim seeking to recover $52,246.49, the deposited amount in excess of $100,000.

Petitioners' counsel contacted RTC regarding petitioners' claim for $52,246.49. RTC appears initially to have treated their inquiries as requests for dividends due from the proof of claim, rather than as requests for reconsideration of the denial of deposit insurance coverage. Petitioners submitted information to RTC concerning their May 1990 meeting with Jackson, including a statement from Jackson confirming the petitioners' account of it. After correspondence with petitioners' counsel and an inquiry by their congressman, RTC officially denied petitioners' request for reconsideration of the insurance determination by letter dated August 18, 1992.

RTC's August 18 decision stated that the three certificates of deposit were "identically-owned joint accounts" which must be aggregated for insurance purposes, citing 12 C.F.R. § 330.7. The decision notes petitioners' contention that First Federal employees gave petitioners advice to the contrary. RTC maintained that it "cannot be bound by representations as to insurance coverage that were contrary to regulations, whether or not members of the public had justifiably relied on such representation." Petitioners seek review of this decision.

RTC contests our jurisdiction under 12 U.S.C. § 1821(f)(4), claiming RTC has not made a final determination. RTC notes that, unlike the facts in *Nimon v. RTC,* 975 F.2d 240 (5th Cir.1992), the last notice given by RTC to the petitioners was not denoted its "final determination." Labels are probative, but not dispositive. We find that RTC "has made a "definitive statement of the agency's position' that is reviewable under section 1821(f)(4)." *Abrams v. FDIC,* 938 F.2d 22, 25 (2d Cir.1991) (quoting *G. & T. Terminal Packaging Co. v. Hawman,* 870 F.2d 77, 80 (2d Cir.1989)).

The finality of agency action is determined by considering the practical effect of the determination. *See Hawman,* 870 F.2d at 79. RTC's decision in this case was, practically speaking, a final determination of petitioners' request for insurance coverage. We base this conclusion in part on RTC's statement, in its brief, that "[t]here would be nothing gained at this point to require the RTC to submit nor perform any additional activity in this matter."

We review RTC deposit insurance determinations under the Administrative Procedures Act and must affirm them unless they are "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nimon,* 975 F.2d at 244. In deciding whether RTC's decision was arbitrary, capricious, or not in accordance with the law, we consider whether the agency followed its governing regulations. *Id.* at 245.[1] We give deference to the interpretation of statutes and regulations by the agencies charged with their implementation. *Id.*

Petitioners contend that RTC disregarded its regulations by failing to consider the ownership and capacities in which the three accounts were maintained. The regulations state

> All deposits in an insured depository institution which are maintained in the same right and capacity (by or for the benefit of a particular depositor or depositors) shall be added together and insured.... Deposits maintained in different rights and capacities, *as recognized under this part,* shall be insured separately from each other.

12 C.F.R. § 330.3(a) (emphasis added). Petitioners argue that an account held in the name of Mr. *and* Mrs. Depositor is maintained in a different capacity than an account held in the name of Mr. *or* Mrs. Depositor. Petitioners can point to no support for this contention. Indeed, their brief states that "there is nothing in the SCR's [sic] relating to whether or not accounts listed "Mr. or Mrs.' can be aggregated with accounts listed "Mr. and Mrs.' "

The regulations recognize a variety of capacities in which accounts may be maintained: single ownership accounts, joint ownership accounts, accounts held by agents or guardians, revocable trust accounts, and so forth. Joint accounts are defined as those whose co-owners (1) are natural persons, (2) each of whom has personally signed a signature card, and (3) each of whom possesses withdrawal

---

[1] The regulations currently found in 12 C.F.R. Part 330 became effective July 29, 1990, 12 C.F.R. § 330.16(a), and so were in effect when First Federal was placed in receivership on August 17, 1990. *See Spawn v. Western Bank-Westheimer,* 925 F.2d 885, 887 n. 1 (5th Cir.1991) (applying pre-FIRREA regulations in effect at time FDIC was appointed receiver).

rights on the same basis. § 330.7(c). This category includes accounts owned as joint tenancies with rights of survivorship, tenancies in common, and accounts in the names of both spouses containing community property funds. § 330.7(a). Joint ownership is the only capacity recognized under the regulations which could apply to accounts held by a couple denoted either "Mr. and Mrs. Depositor" or "Mr. or Mrs. Depositor." Moreover, both petitioners signed the signature card for each account, and First Federal's records indicate joint ownership.

Usually, the presence of two or more signatures on a deposit account signature card is conclusive evidence that an account is jointly owned. § 330.7(c). This conclusive ownership presumption, however, does not apply to certificates of deposit. *See Palermo v. FDIC,* 981 F.2d 843, 846-47 (5th Cir.1993) (construing § 330.7(c)). FDIC and RTC must consider extrinsic evidence to determine whether a certificate of deposit is "in fact" jointly owned, if such ownership is disputed. *Id.*[2] In *Palermo,* the petitioner sought separate insurance coverage for a certificate of deposit by claiming that the account was individually owned despite the presence of two signatures on the signature card. *Id.* at 844. In this case, petitioners have never asserted that the certificates of deposit were not jointly *owned;* they claim that the certificates are held in different *capacities.* There is no need here, as there was in *Palermo,* for a further inquiry into actual ownership.

Petitioners also contend that RTC reached an erroneous decision because it failed to consider the community property aspects of Louisiana law. All property in the possession of spouses is presumptively community property in which each spouse owns an undivided one-half interest. La.Civ.Code Ann. arts. 2340, 2336 (West 1985). Therefore, petitioners argue, they each had an interest of roughly $75,000,[3] and the regulations ought to be construed in order to protect the interest of each spouse up to $100,000.

Petitioners fail to realize that the regulations governing RTC's determination expressly deal with community property in a different manner. RTC found that petitioners' accounts were governed

---

[2]*Nimon* involved money market accounts, not certificates of deposit. *See* 975 F.2d at 242-43.

[3]Petitioners overlook for the purposes of this argument that the "interest" is an undivided, inalienable one-half interest. La.Civ.Code Ann. arts. 2336-37 (West 1985).

by § 330.7, which provides that joint accounts in the names of both spouses comprised of community property will be insured separately from accounts in the names of either spouse individually. § 330.7(a); *see also* § 330.5(c) (providing that an account in the name of one spouse containing community funds is treated as that spouse's individual account). In this fashion, a couple such as the petitioners could maintain at least three accounts in one institution, each separately insured up to $100,000: one in each spouse's individual name and a third in the name of both.[4]

Petitioners maintain that they were justified in relying upon the recommendations of First Federal's employees—and, allegedly, the approval of an RTC agent—when structuring their accounts. Thus, they argue, RTC should have overlooked the faulty form of the May 1990 changes and considered their substance, i.e., petitioners' intent to structure the accounts so as to provide adequate insurance coverage. RTC must rely upon rights and capacities as they are reflected in a failed institution's records. *Nimon,* 975 F.2d at 245. Ordinarily, RTC acts neither arbitrarily nor capriciously when it refuses to base its determinations on the subjective intent of depositors not reflected in the institution's records. We are not persuaded that petitioners' detrimental reliance mandates a different conclusion here. RTC's insurance fund cannot be depleted due to the mistakes of a savings institution's employees. *See Nimon,* 975 F.2d at 246. Jackson, the First Federal employee, states that a RTC agent approved the account changes, which in light of RTC conservatorship might have misled petitioners if they were aware of it. Assuming arguendo that petitioners relied upon a RTC agent's assurance of insurability, RTC cannot be bound to a misrepresentation that was contrary to regulations. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *see also Mendrala v. Crown Mortgage Co.,* 955 F.2d 1132, 1141 (7th Cir.1992) (Federal Home Loan Mortgage Corp. cannot be bound by unauthorized actions of its independent servicing agent).[5]

---

[4]This account structure may have corresponding disadvantages, such as limited withdrawal privileges and complexities in succession upon the death of one account holder.

[5]Our decision does not conflict with *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984). *Harrison* allowed the assertion of estoppel against the FDIC in its capacity as corporate receiver collecting debts, not in its capacity as insurer.

Finally, petitioners' claim that RTC's determination violates their due process rights lacks merit. *See Nimon,* 975 F.2d at 247-48.

The petition for review is denied.