United States Court of Appeals,

Fifth Circuit.

No. 92-8619.

Eve RAINE, Plaintiff-Appellant,

v.

Anthony Ray REED, etc. et al., Defendants,

National Bank, etc., Defendant-Appellee,

FDIC, etc., Intervenor-Appellee.

Feb. 17, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before GOLDBERG, JONES, and DUHÉ, Circuit Judges.[1]

GOLDBERG, Circuit Judge:

Petitioner Eve Raine asks this court to set aside a decision of the Federal Deposit Insurance Corporation ("FDIC") denying her federal deposit insurance on a portion of funds deposited in the now insolvent Peoples Bank, Hewitt, Texas ("Peoples"). Because the FDIC's denial was not arbitrary or capricious, we uphold its decision and affirm the dismissal of this action by the district court.

I. Facts

In October of 1990, Eve Raine's fiance, Anthony Ray Reed, made a series of unauthorized withdrawals from a Peoples' account jointly held by Raine and her mother. The withdrawals, totaling $12,571.25, were procured through the use of an automated teller machine ("ATM") card which Reed had allegedly stolen from Raine's mother.

In early December of that same year, Raine timely notified Peoples of the unauthorized withdrawals. By May of 1991, Peoples had yet to recredit Raine's account for the missing amounts. Raine, therefore, filed suit in Texas state court against the bank (and others) to have the money

---

[1]Judge Jones did not sit for oral argument due to illness, but will participate in the opinion with the aid of tape recordings.

returned to her account.[2]

In June of 1991, Peoples was declared insolvent and the FDIC took over as receiver of the bankrupt institution. Pursuant to a purchase and assumption agreement, the FDIC transferred many of Peoples' deposit accounts to National Bank ("National").[3] In assuming these accounts, National expressly disclaimed liability for all claims based upon the actions (or inactions) of Peoples prior to its closing, and the FDIC specifically promised to indemnify National for any costs incurred related to defending against such claims.

At the time of Peoples' failure, Raine's suit to recover the unauthorized ATM withdrawals was continuing in the state court. Meanwhile, the bank had yet to recredit the amount withdrawn from Raine's account. Therefore, when the FDIC transferred Raine's account to National under the purchase and assumption agreement, it did not include the unauthorized withdrawals in the amount transferred to Raine's new account.

The FDIC in its receivership capacity notified Raine, and all other creditors, of the need to file any and all claims maintained against Peoples with the FDIC. Raine did not file her claims against Peoples with the FDIC and thus failed to follow the procedures established by the receiver for obtaining relief for her complaint against the insolvent bank.

In June of 1991, the FDIC intervened in Raine's pending state court proceeding and removed the case to federal court. The case was remanded back to state court when Raine obtained an order non-suiting Peoples. Raine then amended her state court petition to include National Bank as a

---

[2]Raine additionally named Reed in the lawsuit as well as a local car dealership for selling a car to Reed while he fraudulently purported to act on Raine's behalf.

[3]We recently held that:

> When a federally insured banking institution fails, FDIC, as insurer of the institution's deposits, is obligated to reimburse depositors ... by either of two methods. First, FDIC may simply liquidate the failed bank's assets, pay off insured deposits with the proceeds, and cover any shortfall by drawing on the deposit insurance fund.... As an alternative, FDIC may in certain circumstances arrange a purchase and assumption transaction in which another bank "purchases' the failed bank and continues its operations without interruption. The purchase and assumption approach is generally considered to be more desirable ...

*NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1496 (5th Cir.1990).

defendant. The FDIC, in both its corporate and receivership capacities subsequently intervened and removed this case back to federal court.

In federal court, the FDIC moved to dismiss the action arguing that Raine's claim to reimbursement for the ATM withdrawals was not covered by deposit insurance nor was the disputed amount transferred to National under the purchase and assumption agreement. The district court agreed and granted the motion to dismiss.

Moreover, the court found that in order to recover the lost monies, Raine had to comply with the FDIC's administrative claims procedures. *See United Bank of Waco, N.A. v. First Republic Bank Waco, N.A.,* 758 F.Supp. 1166 (W.D.Tex.1991). Because she failed to follow the required procedures, the court found that it lacked jurisdiction to consider her claims against National and the FDIC. The court then remanded the remaining state law claims to the Texas state court. Raine appeals the finding that the amount of the unauthorized withdrawal was not on deposit with Peoples and thus not covered by deposit insurance at the time the bank failed.

## II. Legal Analysis

Raine argues that the money taken from her account was a deposit liability for purposes of deposit insurance. She relies upon the definition of deposit Congress set out in creating the FDIC. This definition includes "the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a ... checking ... account." 12 U.S.C. § 1813(*l* )(1). In the instant case, Raine also relies on the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, which places on banks the burden of proving that the customer rather than the bank is liable for any unauthorized transaction covered by the EFTA. 15 U.S.C. § 1693g(b). Raine concludes that Congress intended that funds which are withdrawn from a customer's account without authorization should be deemed to be on deposit until the bank can show that the customer was liable for the unauthorized withdrawal. Because EFTA defines an unauthorized withdrawal to be an error which the bank is required to correct by recrediting the account, Raine argues that the money removed by Reed without authorization in effect always remained on deposit in her account. *See* 15

U.S.C. § 1693f (defining unauthorized withdrawal as bank error).

More specifically, Raine relies on 12 C.F.R. § 205.11 which obligates a bank which has been notified of an alleged unauthorized withdrawal to investigate the error within ten days of having been notified. If the bank is not able to promptly investigate and transmit the results to the customer, the bank can extend the time period for investigation to up to 45 days from the time of receiving notice of the error. However, the bank may take advantage of this extension only if the "financial institution provisionally recredits the consumer's account in the amount of the alleged error (including interest where applicable) within 10 business days after receiving notice of error." 12 C.F.R. § 205.11(c)(2)(i); *see also* 15 U.S.C. § 1693f(c) (mandating provisional recredit of account pending conclusion of investigation lasting greater than ten days). Raine argues that the requirement of provisional recrediting essentially dictates that all unauthorized withdrawals must be credited to a depositor's account within ten days after adequate notification has been given unless the bank can prove that the customer was responsible for the withdrawal. As such, Raine asserts that she should not be bound by the bank's failure to comply with the EFTA regulations and that she should be able to take advantage of the deposit insurance which would have been available had the bank acted in accordance with those regulations.

Finally, Raine argues that the dictates of public policy require that she not be precluded from coverage by federal deposit insurance because of an error made by her bank. She contends that depositors should not be left at the mercy of a bank's capacity for accurate record keeping in questions of deposit insurance. She should not, Raine argues, be held responsible for the bank's errors. Such a result, she contends, would allow banks to commit errors removing deposits from the account records of the bank in order to unfairly minimize the FDIC's deposit insurance liabilities.

While Raine's argument is long on pathos, it comes up disappointingly short on logos. Raine is unable to refer this court to any case authority supporting her argument, and our look at the precedents in the area reveals that our prior decisions support exactly the opposite conclusion from

the one urged by Raine.[4]

Deposit insurance determinations are reviewable under the Administrative Procedure Act and we must affirm the FDIC's decision unless it is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nimon v. Resolution Trust Corp.*, 975 F.2d 240, 244 (5th Cir.1992). In conducting this review, "we consider whether the agency followed its governing regulations." *Kershaw v. Resolution Trust Corp.*, 987 F.2d 1206, 1208 (5th Cir.1993). In addition, we are required to accord "a great deal of deference to the FDIC's interpretation of what these regulations do and do not include within their definition of "deposit.' " *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.*, 476 U.S. 426, 438, 106 S.Ct. 1931, 1938, 90 L.Ed.2d 428 (1986).

To begin with, the FDIC regulations provide that the amount of an insured deposit at the closing of a failed bank shall be, "the balance of principal and interest unconditionally credited to the deposit account as of the date of default of the insured depository institution." 12 C.F.R. § 330.3(i)(l). The amount in controversy in this appeal was simply not unconditionally credited to her account, and thus the FDIC determined that it would not be covered by deposit insurance.

Although the federal statute cited by Raine, 12 U.S.C. § 1813(*l*)(1) uses a more expansive definition of covered deposit, including both "conditionally or unconditionally" credited amounts, this section also fails to support her argument. The disputed amount was simply not credited to her account at all, conditionally or otherwise. Thus, the account cannot be covered by deposit insurance because no credit for the amounts withdrawn was entered on the bank's books at the time of failure.

Furthermore, the EFTA will not support Raine's argument as that statute supplies only a cause of action to a customer seeking to have money recredited after an unauthorized withdrawal. 15 U.S.C. § 1693f(e) and 1693m. The EFTA does not change the fact that at the time of the transfer of insured deposits from Peoples to National, the money was not in her account. While she may have had a right to reimbursement for the money removed, she did not have the actual funds in her account at the time the bank failed, and, therefore, the deposit was not covered.

---

[4]The only directly relevant case cited by appellant to support her argument, *First Interstate Bank of Denver, N.A. v. Federal Deposit Ins. Corp.*, 718 F.Supp. 848 (D.Colo.1989) was vacated at 748 F.Supp. 1463 (D.Colo.1989).

The withdrawals were the subject of ongoing litigation and were plainly not in the records of the bank. We have a well-grounded history of permitting the FDIC to rely exclusively on the books and records of an insolvent institution in effectuating the takeover of banks and in making the many deposit insurance determinations which are necessary to that task. *Abdulla Fouad & Sons v. Federal Deposit Ins. Corp.,* 898 F.2d 482, 484-85 (5th Cir.1990); *Nimon,* 975 F.2d at 245.

We have previously advanced significant policy rationales supporting the FDIC's practice of relying on bank account records in making deposit insurance determinations. We noted that the FDIC must "make determinations of deposit insurance coverage overnight when it decides to enter into a [purchase and assumption] transaction." *Abdulla Fouad,* 898 F.2d at 485. Therefore, the "deposit insurance agencies operate under time constraints which justify rules that they rely upon the failed institution's books and records." *Nimon,* 975 F.2d at 245. Prompt determination also preserves the going concern value of a failed bank and minimizes interference with the provision of bank services. *Id.*

Forcing the FDIC to consider deposit accounts which are the subject of ongoing litigation would draw the FDIC into an interminable morass of deposit disputes. The final disposition of an insolvent bank's assets would be delayed pending the resolution of far flung litigation, hampering the successful transfer of assets to a considerable degree. We will not undermine the speed and efficiency of bank takeovers by imposing a requirement upon the FDIC to locate and evaluate every possible avenue of disputed liability in implementing the takeover of a failed bank.

Even where the bank itself has committed a mistake, our court has refused to alter the requirement that deposits be on the books of the insolvent bank in order to be covered by deposit insurance. *See Kershaw,* 987 F.2d at 1210 ("RTC's insurance fund cannot be depleted due to the mistakes of a savings institution's employees."); *cf. Arlington v. Federal Deposit Ins. Corp.,* 963 F.2d 79 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992) (two million dollar account not listed as a deposit and thus not covered by purchase and assumption agreement despite fact that bank was responsible for mistakenly offsetting account against a third party's loan).

The regulations are clear and simple, either the amount is credited to the account, in which case it is covered by deposit insurance, or the amount is not on the books, in which case it becomes a general liability of the bank. In the instant case, Raine's claim to have the unauthorized withdrawals recredited to her account was necessarily a general liability of the bank. Because she failed to bring a timely claim against the receiver despite being notified by the FDIC of the requirement to do so, she has lost this opportunity to pursue her claim. *See Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881-82 (5th Cir.1992).

Automated operations in our society carry with them very many virtues and very few vices. In this case, the fact is that Raine failed the only opportunity she had to correct an error made in the midst of all the hubbub of electronic transactions which characterize modern banking. She forfeited the statutory rights established to protect consumers such as herself from the dizzying pace of this computer driven industry when she failed to seek redress of this claim against the FDIC. We must avoid the eternalization of claims against insolvent banks by enforcing the requirement that litigants follow the proper paths for realizing what is justly their due.

Because the amount in controversy was the subject of ongoing litigation and was not credited to her account, the FDIC did not abuse its discretion in denying Eve Raine deposit insurance on the amount of money which was withdrawn from the account without her authorization.

III. Conclusion

The judgment of the district court is AFFIRMED.