**Michael McCLOUD, Marilyn McCloud, Earl W. Barros, Eric B. Wendland, Joan McCloud, Edward S. McCloud, Joseph McCloud, Stephen E. McCloud and George J. Ramsey, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Insurer and as Liquidating Agent/Receiver of Massachusetts Bank and Trust Co., Defendant.**

No. 93–10980–PBS.

United States District Court, D. Massachusetts.

May 26, 1994.

Joan McCloud, Edward S. McCloud, Joseph McCloud, Stephen E. McCloud and George J. Ramsey (the "plaintiffs") brought this action against the Federal Deposit Insurance Corporation (the "FDIC"), in its dual capacities as insurer ("FDIC-insurer") and receiver ("FDIC-receiver") of the Massachusetts Bank and Trust Company (the "bank"), to recover funds the plaintiffs had deposited with the bank. The plaintiffs contend the FDIC is obligated to insure funds that were in their savings accounts until four weeks prior to the date the bank went into receivership, at which time they were fraudulently misappropriated by the president and chief executive officer of the bank. The FDIC, in its corporate capacity as insurer of the bank, has moved to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. The plaintiffs have filed a cross-motion for summary judgment against the FDIC-insurer. After hearing, plaintiffs' motion for summary judgment is **ALLOWED** with respect to Count 1 of the Amended Complaint. Defendant's motion is **DENIED.**

### BACKGROUND

The parties have no genuine dispute concerning the following material facts. Until it was declared insolvent on July 31, 1992, the bank was a banking association organized and existing under the laws of Massachusetts. The FDIC insured its bank deposits.

Preston W. Halperin, Levy & Halperin, Boston, MA, for plaintiff.

Sumita Mukhoty, F.D.I.C.–Legal Div., Washington DC and Paul M. Tyrell, Shaffner & Gilleran, Boston, MA, for defendant.

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT*

SARIS, District Judge.

The plaintiffs, Michael McCloud, Marilyn McCloud, Earl W. Barros, Eric B. Wendland,

On or about February 15, 1992, savings accounts of $84,560.16 were established for each of the named plaintiffs at the bank. The bank debited the plaintiffs' deposits in their entireties on or about July 3, 1992 without the consent or authorization of the plaintiffs. The bank president "wrongfully appropriated and converted" these funds and used the monies to repay loans from the bank to two separate realty trusts, the McCloud Trust and the Leslie Realty Trust. With the exception of the plaintiff Joan McCloud (who was a fifty percent beneficiary of each trust), none of the other eight plaintiffs had any interest in the realty trusts. The savings accounts were not pledged or

otherwise serving as collateral for the loans to the McCloud trust and/or Leslie Realty Trust. None of the plaintiffs personally guaranteed the trust loans.

On July 31, 1992, the Commissioner of Banks for the Commonwealth of Massachusetts closed the bank and appointed the FDIC as receiver. The plaintiffs filed a claim with the FDIC-insurer, claiming that the Federal Deposit Insurance Act covered their deposits. The FDIC-insurer denied insurance coverage because the plaintiffs' deposits did not exist on the account records of the bank at the time of its closing. Plaintiffs also filed a claim with FDIC-receiver, which denied the claim without explanation. The plaintiffs subsequently filed the present action. Count I is against the FDIC-insurer for deposit insurance. Counts II and III are against the FDIC-receiver for fraud, misappropriation, and conversion.

### *DISCUSSION*

A motion for summary judgment must be granted if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted' " *Id.* (quoting *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)).

The primary issue before this Court is whether the FDIC, in its determination that the plaintiffs did not have insured accounts, acted in an arbitrary or capricious manner or contrary to law by relying on the bank's account records on the day of the closing as conclusive.

■ Deposit insurance determinations are reviewable under the Administrative Procedure Act. The FDIC's decision must be affirmed unless it is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Raine v. Reed,* 14 F.3d 280, 283 (5th Cir.1994) (quoting *Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 244 (5th Cir.1992)). The court gives great deference to the FDIC and the court limits its review to "consider whether the agency followed its governing regulations." *Id.* (quoting *Kershaw v. Resolution Trust Corp.,* 987 F.2d 1206, 1208 (5th Cir. 1993)). The court is "required to accord 'a great deal of deference to the FDIC's interpretation of what these regulations do and do not include within their definition of deposit.' " *Id.* (quoting *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.,* 476 U.S. 426, 438, 106 S.Ct. 1931, 1938, 90 L.Ed.2d 428 (1986)).

This Court's review begins with the term "deposit," which Congress defined, in relevant part, as "the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a ... savings ... account...." 12 U.S.C. § 1813(*l*)(1) (Supp. 1992). Under 12 U.S.C. § 1813(m)(1) (Supp. 1992), an "insured deposit" is defined as the "net amount due to any depositor for deposits in an insured depository institution as determined under sections 1817(i) and 1821(a) of this title."

The FDIC regulations provide that the amount of a deposit is "the balance of principal and interest unconditionally credited to the depository account as of the date of default of the insured depository institution...." 12 C.F.R. 330.3(i)(1) (1993). In 12

C.F.R. § 330.3(h) (1993) the FDIC regulations specify:

> Deposit insurance coverage is also a function of the deposit account records of the insured depository institution, of record-keeping requirements, and of other provisions of this part, which . . . are controlling for purposes of determining insurance coverage.

Deposit account records include:

> [A]ccount ledgers, signature cards, certificates of deposit, passbooks . . . and other books and records of the insured depository institution . . . which relate to the insured depository institution's deposit taking function. . . .

12 C.F.R. § 330.1(d) (1993).

The FDIC argues that the bank's account records on the day of the bank's closing are conclusive in making deposit insurance determinations. There is a "well-grounded history of permitting the FDIC to rely exclusively on the books and records of an insolvent institution in effectuating the takeover of banks and in making the many deposit insurance determinations which are necessary to that task." *Raine*, 14 F.3d at 283. Courts have advanced several "significant policy rationales" supporting the FDIC's practice of giving conclusive weight to the bank account records. *Id.* The FDIC must "make determinations of deposit insurance coverage overnight when it decides to enter into a [purchase and assumption] transaction." *Abdulla Fouad & Sons v. Federal Deposit Ins. Corp.*, 898 F.2d 482, 485 (5th Cir.1990). "[D]eposit insurance agencies operate under time constraints which justify rules that they rely upon the failed institution's books and records." *Nimon v. Resolution Trust Corp.*, 975 F.2d 240, 245 (5th Cir.1992). "Prompt determination also preserves the going concern value of a failed bank and minimizes interference with the provision of bank services." *Raine*, 14 F.3d at 283. "Forcing the FDIC to consider deposit accounts which are the subject of ongoing litigation would draw the FDIC into an interminable morass of deposit disputes." *Id.*

Even where bank employees have committed a mistake, courts have consistently refused to alter the requirement that deposits be on the books of the insolvent bank in order to be covered by deposit insurance. *See Kershaw*, 987 F.2d at 1210 (no deposit coverage although bank employees negligently assured depositors structuring their accounts that the accounts would be insured); *Raine*, 14 F.3d at 282–83 (where depositor's fiancee made a series of unauthorized withdrawals from the bank which the bank erroneously failed to reimburse, the money taken from the account was not a deposit liability for purposes of deposit insurance); *In Re Collins Sec. Corp.*, 998 F.2d 551, 554–55 (8th Cir.1993) (where bank mistakenly paid an account balance to the depositor's assignor, the liability was not insured) (*"Collins"*). As the *Collins* court explained: "Deposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistakes, which is frequently covered by errors and omissions insurance." 998 F.2d at 555.

Set against this seemingly solid phalanx of law establishing the conclusiveness of bank account records is "the well-established principle that records that would otherwise be conclusive evidence may be attacked as fraudulent." *Collins*, 998 F.2d at 555; *see Jones v. Federal Deposit Ins. Corp.*, 748 F.2d 1400, 1405 (10th Cir.1984) ("If a depositor challenges the bank records . . . as to their correctness, there exists a presumption of correctness which may be overcome by proof that the records do not properly and accurately reflect the instructions of the depositor to the bank.")

Courts have "permitted the depositor to prove the existence of an insured account by evidence outside the bank's account records" where there is a claim of fraud. *Collins*, 998 F.2d at 555; *see, e.g., Federal Deposit Ins. Corp. v. Records*, 34 F.Supp. 600, 602 (W.D.Mo.1940) (deposit was insured where a bank cashier took the depositor's money, marked the deposit in the depositor's passbook, and then embezzled the money without recording it on the banker's account records); *Federal Deposit Ins. Corp. v. Deaton*, 105 F.2d 677, 679 (10th Cir.1939) (where bank employees prior to insolvency fraudulently endorsed check of depositor without his knowledge or authority, and the amount was

charged against his account, the deposit liability was insured); *Jones v. Federal Deposit Ins. Corp.,* 24 F.Supp. 985, 986 (W.D.Okla. 1938) (insurance coverage where bank employees dissipated accounts and took ledger sheets out of active banking records prior to insolvency); *Barton v. Johnson,* 24 F.Supp. 987, 988 (W.D.Okla.1938), *aff'd, Federal Deposit Ins. Corp. v. Barton,* 106 F.2d 737, 738 (10th Cir.1939) (where bank official transferred money out of account without authority and with "ulterior purposes," deposit was insured). While these cases are from the Depression era, they have recently been cited with approval. *Collins,* 998 F.2d at 556;[1] *see also Arlington v. Federal Deposit Ins. Corp.,* 963 F.2d 79, 82 (5th Cir.) (distinguishing between the liability of the FDIC where a bank's employees make mistakes as opposed to circumstances where the bank's fraudulent acts caused the record of the depositor's account to be questioned, an actual deposit of money was made to an account, and both the deposit and the account were clearly documented in the bank records), *cert. denied,* —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

■ While the FDIC's practice and belief regarding the conclusiveness of bank records must be given great deference, *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.,* 476 U.S. at 438, 106 S.Ct. at 1938, the FDIC's regulations do not specifically address the situation of fraudulent conversion of monies in a deposit by bank employees. In its memorandum, the FDIC concedes that "bank records which have been fraudulently altered are not conclusive evidence of the existence of insured accounts and the records are subject to be attacked as fraudulent." It would indeed be contrary to the basic mission of the FDIC to insist on the conclusiveness of bank records when the depositor of

tangible hard assets is injured by fraudulent recordkeeping by the bank itself. *See id.; cf. Villafane–Neriz,* at 39, ("basic mission" of FDIC is to protect insured depositors). Section 330.3(h) specifies that deposit insurance coverage is not just a function of the "deposit account records" but also of "recordkeeping requirements."

■ Here, as there is undisputed evidence of fraud by the bank president, it was arbitrary, capricious and contrary to law for the agency to consider the customer profile[2] as of the day of the bank's default as conclusive as to whether an insured deposit existed when the bank failed. At oral argument the court pressed counsel for FDIC as to whether a remand to FDIC would be appropriate to determine whether to contest plaintiffs' claims of fraud and conversion by the bank. The FDIC insisted that no remand was necessary because they did not contest the assertions of fraud by the bank president. The FDIC instead urges this Court to rule that the undisputed evidence of the fraudulent conduct of a bank employee in misappropriating funds is not tantamount to fraud which should undermine the conclusiveness of the bank records. In the circumstances of this case, however, the evidence supports a finding not only that funds were converted by the bank president but also that the records of the deposits were altered during the course of that fraudulent conduct. This evidence is sufficient to rebut the presumption of the correctness of the bank records on the day of the bank's closing.[3]

### ORDER

For the foregoing reasons, it is hereby *ORDERED* that plaintiffs' motion is *ALLOWED,* with respect to Count I of the First Amended Complaint, and defendant's motion

---

1. Interestingly, the First Circuit cites *Collins* for the proposition that "the FDIC is not liable in its corporate capacity because no account existed at the time of the bank's failure due to a *nonfraudulent* pre-failure bank error." *Villafane–Neriz v. Federal Deposit Ins. Corp.,* 20 F.3d 35, 40 n. 6 (1st Cir.1994) (emphasis added).

2. The affidavit submitted by the FDIC is unclear as to what account records constitute the customer profile. The court need not determine whether the FDIC was arbitrary and capricious

as to which account records it looked at as it does not contest that the deposits were debited as a result of fraudulent activities of bank employees.

3. The FDIC-insurer correctly argues that the FDIC-receiver, not it, is liable in tort for the bank's wrongdoing. *See, e.g., Hale House Center, Inc., v. Federal Deposit Ins. Corp.,* 788 F.Supp. 1309, 1317 (S.D.N.Y.1992).

is **DENIED.** Plaintiffs shall inform the Court within ten days as to whether they wish to proceed with the remainder of the case against FDIC-receiver.